Alan Steven Wolf – Bar No. 94665
Caren Jacobs Castle – Bar No. 93888
Daniel K. Fujimoto – Bar No. 158575
Mark T. Domeyer – Bar No. 135008
THE WOLF FIRM, A Law Corporation
2955 Main Street, Second Floor
Irvine, CA 92614
Telephone: (949) 720-9200
Fax: (949) 608-0128
Attorneys for Creditor, Bosco Credit LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>Tina Marie Jimenez aka Tina M. Jimenez Perez aka Tina M. Perez aka Tina J. Perez,<br><br>Debtor.<br><br>. | CASE NO: 15-53504<br><br>CHAPTER: 13<br><br>**OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**<br><br>**341a Meeting:**<br>Date: 12/21/2015<br>Time: 9:30 a.m._____<br>Room: 130<br><br>**Confirmation Hearing:**<br>Date: 1/5/2016<br>Time: **9:55 am**<br>Courtroom: 3099<br><br>UNITED STATES BANKRUPTCY COURT<br>280 South First Street<br>San Jose, CA 95113-3099 |

TO: THE HONORABLE STEPHEN L. JOHNSON, UNITED STATES BANKRUPTCY JUDGE:

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Federal Rule of Evidence 201 as incorporated by Federal Rule of Bankruptcy Procedure 9017, Creditor respectfully requests this Court take judicial notice of Debtor's proposed Chapter 13 Plan of Reorganization ("Plan") on file herein, and the Proof of Claim filed by Creditor on November 30, 2015, copies of which are attached as Exhibits "4" and "5" to the Declaration of _____ filed herewith.

Creditor, Bosco Credit LLC, ("Creditor"), secured creditor of the above-entitled Debtor, Tina Marie Jimenez aka Tina M. Jimenez Perez aka Tina M. Perez aka Tina J. Perez ("Debtor"), hereby submits its objection to Debtor's proposed Chapter 13 Plan of Reorganization.

## BACKGROUND

1. Creditor holds a Home Equity Line of Credit Agreement (the "Agreement") in the original principal sum of 66,992.00 made, executed, and delivered by Tina Perez on August 8, 2006 to Cal State 9 Credit Union ("Lender"). Pursuant to the Agreement, Debtor is obligated to make monthly principal and interest payments. A copy of the Agreement is attached hereto as Exhibit "1" and incorporated herein by reference.

2. The Agreement is secured by a Deed of Trust dated August 8, 2006 made, executed, and delivered to Lender by Tina Perez and encumbering the real property commonly known as 4684 Holycon Circle, San Jose, CA 95136 ("Property"). The Deed of Trust was recorded on August 24, 2006 in the official records of the Santa Clara County Recorder's office. A copy of the Deed of Trust is attached hereto as Exhibit "2" and incorporated herein by reference.

3. Lender's interest in the Deed of Trust was subsequently assigned to Creditor. A copy of the Corporation Assignment of Deed of Trust evidencing the assignment to Creditor is attached hereto as Exhibit "3" and incorporated herein by reference.

4.       Creditor currently holds the Agreement and is entitled to enforce the provisions of the Agreement and Deed of Trust. The Agreement is specially indorsed by Lender made payable to Creditor, and Creditor is in rightful possession of the specially indorsed Agreement.

5.       On November 4, 2015, Debtor filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. Debtor's Chapter 13 Plan of Reorganization ("Plan") proposes to make payments to the Trustee in the amount of $805.00 per month for 60 months. Of that sum, Debtor provides to pay $410.47 per month on Creditor's pre-petition arrears which are listed in the amount of $27,763.00, at the rate of 0.00 percent per annum.

6.       The pre-petition arrearage on Creditor's secured claim is in the sum of $27,829.14. A copy of Creditor's Proof of Claim is attached hereto as Exhibit "5" and incorporated herein by reference.

## **GROUNDS FOR OBJECTION**

Creditor objects to Debtor's proposed Plan for the following reasons:

1.       <u>Impermissible Cramdown</u>

11 U.S.C. §1322(b)(2) states that a plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is Debtor's principal residence. The U.S. Supreme Court held that Chapter 13 debtors cannot bifurcate mortgage lien claims on their principal residence into secured and unsecured claims, and effectively prohibited modifications to notes and deeds of trust secured by a debtor's principal residence. <u>In re Nobleman</u>, 113 S.Ct. 2106 (1993).

Debtor's Plan provides for a modification of Creditor's loan that is secured by the Property that Creditor asserts is Debtor's principal residence. Debtor's bankruptcy petition lists Property as Debtor's residence and the Property is listed as Debtor's service address per PACER. Further, Debtor's Statement of Financial Affairs fails to list any prior addressed for the previous three (3) years, and Debtor's Schedule G fails to

1  list a residential lease agreement to indicate the Property is tenant-occupied. Debtor's
2  Plan provides for a cramdown of Creditor's loan on Debtor's principal residence, thereby
3  clearly violating 11 U.S.C. §1322(b)(2) and the U.S. Supreme Court's holding in
4  Nobleman.

5      Creditor reserves the right to raise further objections at the time of the
6  confirmation hearing.

7

8      WHEREFORE, Creditor prays:

9      1.      Confirmation of Debtor's Plan be denied.

10     2.      Alternatively, Creditor requests that Debtor  amend the Plan to reflect
11  Creditor maintains an Adjustable Rate Agreement.

12     3.      For such other and further relief as this Court deems appropriate.

13

14  Dated:  December 21, 2015              Respectfully submitted,

15

16                                        THE WOLF FIRM,
                                          A Professional Law Corporation

17

18                                        By:  /s/ Mark T. Domeyer
                                          Mark T. Domeyer
19                                        Attorneys for Creditor
                                          Bosco Credit LLC
20

21

22

23

24

25

26

27

28

1 | Alan Steven Wolf – Bar No. 94665
Caren Jacobs Castle – Bar No. 93888
2 | Daniel K. Fujimoto – Bar No. 158575
Mark T. Domeyer – Bar No. 135008
3 | THE WOLF FIRM, A Law Corporation
2955 Main Street, Second Floor
4 | Irvine, CA 92614
Telephone: (949) 720-9200
5 | Fax: (949) 608-0128
Attorneys for Creditor, Bosco Credit LLC
6

7
UNITED STATES BANKRUPTCY COURT
8
NORTHERN DISTRICT OF CALIFORNIA
9
SAN JOSE DIVISION
10

11
In re: | CASE NO: 15-53504
12
Tina Marie Jimenez aka Tina M. Jimenez | CHAPTER: 13
13 | Perez aka Tina M. Perez aka Tina J.
Perez | **DECLARATION OF _____**
14 | | **IN SUPPORT OF OBJECTION TO**
Debtor. | **CONFIRMATION OF CHAPTER 13 PLAN**
15
**341a Meeting:**
16 | Date: 12/21/2015
Time: **9:30**_____
17 | Room: 130

18 | **Confirmation Hearing:**
Date: 1/5/2016
19 | Time: **9:55 am**
Courtroom: 3099
20
UNITED STATES BANKRUPTCY COURT
21 | 280 South First Street
San Jose, CA 95113-3099
22

23 | I, ⟨signature⟩, declare:

24      1.    I am employed by Franklin Credit Management Corporation, servicing

25 | agent for Creditor Bosco Credit, LLC, a corporation organized and existing under the

26 | laws of the United States.

27      2.    I am the custodian of records of loans involved in Bankruptcy proceedings

28 | and the records are maintained under my control and supervision.

- 1 -
DECLARATION IN SUPPORT OF OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

1        3.      All loan documents, including promissory Agreements and Deeds of Trust,

2   are kept in the ordinary course of business and at or about the time of any loan activity,

3   entries are made in the books, records, and computers of Franklin Credit Management

4   Corporation reflecting that activity.

5        4.      I am informed and believe that on 11/4/2015, Debtor filed a Chapter 13

6   petition and Debtor claims an interest in the property which is security for the debt owed

7   to Bosco Credit, LLC.

8        5.      A true and correct copy of Debtors' proposed Chapter 13 Plan is attached

9   hereto as Exhibit "4" and incorporated herein by reference.

10       6.      A true and correct copy of the Proof of Claim ("Proof of Claim") filed by

11  Creditor on 11/30/2015, is attached hereto as Exhibit "5" and incorporated herein by

12  reference.

13       7.      I have examined the files and records of Franklin Credit Management

14  Corporation regarding the Agreement and Deed of Trust which is the subject of this

15  Objection and have found the following information to be true:

16       a. Creditor holds an Agreement dated 8/8/2006 made, executed, and

17  delivered to Cal State 9 Credit Union ("Lender") in the original principal sum of

18  $66,992.00. A copy of the Agreement is attached hereto as Exhibit "1".

19       b. The Agreement is secured by a Deed of Trust encumbering residential

20  real property commonly known as 4684 Holycon Circle, San Jose, CA 95136

21  ("Property"). The Deed of Trust reflects it was duly recorded. A copy of the Deed of

22  Trust is attached hereto as Exhibit "2".

23       c. Creditor is an entity entitled to enforce the Agreement under the laws of

24  the state where the real property is located and is the named beneficiary under the

25  Deed of Trust by way of an assignment which is attached hereto as Exhibit "3".

26       d. Creditor is a person entitled to enforce the Agreement under the laws of

27  the state where the real property is located as the Agreement is specially indorsed by

28

- 2 -

DECLARATION IN SUPPORT OF OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN
806-3154

1 Lender made payable to Creditor, and Creditor is in rightful possession of the specially
2 indorsed Agreement.

3      e. There was a default under the terms of the Note and Deed of Trust and on
4 8/14/2015, Movant caused a Notice of Default and Election to Sell ("NOD") to be
5 recorded in the official records of the Santa Clara County Recorder's office. A copy of
6 the NOD is attached hereto as Exhibit "6" and incorporated herein by reference.

7      f. At the time of the filing of the instant case, the pre-petition arrearages
8 under the Agreement and Deed of Trust were approximately $27,829.14. A copy of the
9 Statement of Arrearages is attached hereto as Exhibit "7" and incorporated herein by
10 reference.

11      g. Since the time of the filing of the instant case, Debtor has failed to tender
12 any payments to Creditor.

13      h. The Principal balance due under Creditor's Agreement and Deed of Trust
14 as of 11/9/2015, exclusive of post-petition attorneys' fees and costs, was approximately
15 $64,433.11.

16     8. Upon information and belief there may be some equity to support the
17 Creditor's lien but additional time is needed for Creditor to obtain appraisal evidence.

18     9. I have personal knowledge of the foregoing, except as to those matters stated
19 under information and belief, and as to those matters I believe them to be true, and if
20 called upon as a witness I could and would competently testify thereto.

21     I declare under penalty of perjury under the laws of the State of California and
22 the United States that the foregoing is true and correct, and this Declaration was
23 executed this 21 day in the month of December, in the City of
24 Jersey City, in the State of New Jersey

27     Declarant

- 3 -
DECLARATION IN SUPPORT OF OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

PROOF OF SERVICE

RE:          Tina Marie Jimenez

CASE NO.:    15-53504

    I declare that I am employed in the County of Orange, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 2955 Main Street, Second Floor, Irvine, CA  92614.  On <u>December 21, 2015</u> I served an **OBJECTION TO CONFIRMATION** on each of the interested parties by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid in the United States mail at Irvine, California, addressed as follows:

<div align="center">

SEE ATTACHED LIST MARKED AS
EXHIBIT "1" AND INCORPORATED
HEREIN BY REFERENCE
</div>

    I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on <u>December 21, 2015</u>, at Irvine, California.

<u>/S/ Francis G. Wambu</u>
Francis G. Wambu

Case: 15-53504    Doc# 13    Filed: 12/21/15    Entered: 12/21/15 14:42:56    Page 8 of 70
806-3154

EXHIBIT "1"

RE:  Tina Marie Jimenez
CASE NO.:  15-53504

**Debtor:**
Tina Marie Jimenez
4684 Holycon Circle
San Jose, CA 95136

**Debtor's Counsel:**
James S.K. Shulman
Law Offices of James Shulman
1501 The Alameda
San Jose, CA 95126

**Chapter 13 Trustee:**
Devin Derham-Burk
P.O. Box 50013
San Jose, CA  95150-0013

**U.S. Trustee:**
Office of the U.S. Trustee - San Jose
U.S. Federal Bldg.
280 South First Street, Room 268
San Jose, CA 95113-3004

**Judge:**
Honorable Stephen L. Johnson
Attn: Tanya Bracegirdle / Chambers Copy
280 South First Street, Room 3035
San Jose, CA 95113-3099

# EXHIBIT 1

# HOME EQUITY LINE OF CREDIT AGREEMENT
## AND DISCLOSURE STATEMENT

PEREZ
LOAN #:

| | | |
|---|---|---|
| AUGUST 8, 2006 | MILPITAS | CALIFORNIA |
| [Date] | [Title City] | [Title State] |

4684 HOLYCON CIRCLE, SAN JOSE, CA 95136

[Property Address]

| | | | | |
|---|---|---|---|---|
| Credit Limit | $ 66,992.00 | Draw Period | 120 MONTHS | |
| Initial Advance | $ 66,992.00 | Repayment Period | 180 MONTHS | |
| Minimum Advance | $ 500.00 | Minimum Balance $ | 0.00 | |
| Margin | 2.500 % | | | |
| Initial ANNUAL PERCENTAGE RATE | 10.750 % | | | |

[X] Initial Rate Not Discounted. The Daily Periodic Rate is 0.0295 %, which corresponds to the Initial ANNUAL PERCENTAGE RATE indicated above. The ANNUAL PERCENTAGE RATE may change and will be determined by adding the Margin described above to the Index (as defined in Section 1 below).

## 1. DEFINITIONS:

(A) "Agreement" means this document.

(B) "You" or "Your" is TINA PEREZ

Your address is 4684 HOLYCON CIRCLE, SAN JOSE, CA 95136

(C) "Lender" is CAL STATE 9 CREDIT UNION

Lender's address is 2300 CLAYTON RD # 220, CONCORD, CA 94527-1768

(D) "Holder" is Lender or any person or entity who takes this Agreement by transfer and is entitled to receive payments under this Agreement.

(E) "Account" means your home equity line of credit account with Holder.

(F) "Loan" or "Loans" means any money advanced to you by Holder when you access the Account.

(G) "Credit Limit" means the maximum aggregate amount of principal of the Loans that Holder will allow you to owe under this Agreement, unless otherwise agreed. The Credit Limit is indicated above.

(H) "Account Balance" means the total of the unpaid principal of the Loans, plus earned but unpaid FINANCE CHARGES, fees, and credit insurance premiums.

(I) "Minimum Balance" means the minimum amount of principal of all Loans that you must maintain under the Account. The Minimum Balance is indicated above.

(J) "Initial Advance" means the minimum amount of the Loan that you must accept to open the Account. The Initial Advance is indicated above.

(K) "Minimum Advance" means the minimum amount of a Loan that you must request by any means other than the credit card or cards that Holder furnishes to you to make purchases or receive advances ("Credit Card"). The Minimum Advance is indicated above.

(L) "Draw Period" means the period of time during which you may request Loans and must make payments on your Account Balance. The Draw Period is indicated above.

(M) "Repayment Period" means the period of time beginning at the end of the Draw Period during which you no longer may request Loans and must repay the Account Balance. The Repayment Period is indicated above.

(N) "Billing Statement" means a statement furnished by Holder each Billing Cycle (as defined in subsection (O) below) that shows, among other things, Loans, FINANCE CHARGES, other charges, payments made, other

Case: 15-53504    Doc# 13    Filed: 12/21/15    Entered: 12/21/15 14:42:56    Page 11 of 70

credits, the previous Account Balance, the current Account Balance, and the required payment for the Account during the Billing Cycle.

(O) "**Billing Cycle**" means the regular period or interval between the days or dates of the Billing Statements during which **FINANCE CHARGES** accrue and that will be used to determine the amount of your payment and when your payment is due. The Billing Cycle is **monthly**.

(P) "**Index**" means the lowest base rate on corporate loans at large U.S. money center commercial banks that *The Wall Street Journal* publishes as the prime rate.

## 2. OPENING YOUR ACCOUNT

The Account will be opened when you have signed and delivered in acceptable form all documents considered necessary by Holder and Holder makes the Initial Advance to you. Each of you who signs this Agreement is jointly and individually obligated to keep all of the promises made in this Agreement, and, as such, Holder may require any of you to pay all amounts due under this Agreement. Each of you agrees not to give Holder conflicting instructions under this Agreement.

## 3. ACCESSING YOUR ACCOUNT

You may access the Account after any right you have to cancel this Agreement expires and all of Holder's conditions have been met. You may access the Account initially only for an amount equal to or greater than the Initial Advance. Thereafter, you may access the Account only for an amount equal to or greater than the Minimum Advance. Holder at Holder's option may without obligation make a Loan in an amount that is less than the Minimum Advance; by doing so, however, Holder does not waive the right to later refuse to make such a Loan.

You may access the Account by: (a) writing a check using one of the checks that Holder furnishes to you ("Checks"); (b) authorizing Holder to pay a third party or account; or (c) any other method acceptable to Holder. Each of you who signs this Agreement may access the Account jointly or individually, and Holder may rely on instructions from any one of you with regard to this Agreement.

You may not use any Loan provided by Holder to make payments on the Account. In addition, Holder reserves the right not to honor a Check under the following circumstances: (a) the Check is post-dated (if a post-dated Check is paid and as a result any other Check is returned, Holder will not be responsible); (b) a Check or Checks have been reported lost or stolen; (c) the Check is not signed by one of you; or (d) the Account has been terminated or suspended as provided in this Agreement or can be so terminated or suspended if Holder pays the Check. Dishonor of a Check by Holder for any reason provided in this Agreement will not constitute wrongful dishonor. Holder's liability otherwise for wrongful dishonor, if any, of a Check is limited to your actual damages.

## 4. AVAILABILITY OF LOANS

You may access the Account and receive a Loan during the Draw Period, subject to the provisions of this Agreement. Holder at Holder's option may extend the Draw Period. During the Draw Period, you may borrow against the Account, repay any portion of the Account Balance, and re-borrow such portions up to the Credit Limit.

You may not access the Account so as to cause the Account Balance to exceed the Credit Limit. However, Holder at Holder's option may make a Loan that causes the Account Balance to exceed the Credit Limit; by doing so, however, Holder does not waive the right to later refuse to make such a Loan. If Holder agrees to make a Loan that causes the Account Balance to exceed the Credit Limit, you agree to execute additional security documents.

## 5. FINANCE CHARGES

In addition to the amount of any Loans made to you, you agree to pay Holder a **FINANCE CHARGE** ("**FINANCE CHARGE**" or "**FINANCE CHARGES**") on the Account Balance. The Account Balance for each day is determined by taking the Account Balance at the beginning of that day and (a) subtracting any unpaid **FINANCE CHARGE**, fees, and credit insurance premiums that are due; (b) subtracting the portion of any payments or credits received by Holder that day that apply to the repayment of the Loans; and (c) adding any Loans made that day.

The **FINANCE CHARGE** on a Loan begins to accrue immediately from the time Holder makes the Loan to you. There is no "free ride period" during which **FINANCE CHARGES** will not accrue.

The **FINANCE CHARGE** is determined for each day by applying a daily periodic rate ("Daily Periodic Rate") to the Account Balance for that day; the Daily Periodic Rate is 1/365th of the **ANNUAL PERCENTAGE RATE** applicable to that day. The total **FINANCE CHARGE** for each Billing Cycle is determined by adding together the **FINANCE CHARGE** for the actual number of days during the Billing Cycle.

The Initial **ANNUAL PERCENTAGE RATE is indicated on the first page of this Agreement.** The manner in which the **ANNUAL PERCENTAGE RATE** will change will be determined by the box marked on the first page of this agreement.

The **ANNUAL PERCENTAGE RATE** will increase or decrease if the Index increases or decreases; the corresponding increase or decrease in the Daily Periodic Rate will be determined as described above. An increase or

Case: 15-53504   Doc# 13   Filed: 12/21/15   Entered: 12/21/15 14:42:56   Page 12 of 70

decrease in the **ANNUAL PERCENTAGE RATE** will result in a corresponding increase or decrease in the **FINANCE CHARGE** and may result in a corresponding increase or decrease in your monthly payment. The Index may change daily; however, the Index in effect on the day the **ANNUAL PERCENTAGE RATE** is adjusted will be used to determine the new **ANNUAL PERCENTAGE RATE**. We will use the most recent index value available to us as of the last business day of the month prior to an **ANNUAL PERCENTAGE RATE** change. Any change in the **ANNUAL PERCENTAGE RATE** will take effect on the first day of each calendar quarter.

The **ANNUAL PERCENTAGE RATE** can change quarterly on the first day of January, April, July, and October. There is no limit on the amount by which the **ANNUAL PERCENTAGE RATE** can change during any one year period. The **ANNUAL PERCENTAGE RATE** will never exceed the lesser of 18.00% or the highest allowable rate for this type of Agreement as determined by applicable state or federal law ("Maximum **ANNUAL PERCENTAGE RATE**"). The **ANNUAL PERCENTAGE RATE** includes only interest and no other costs.

**6. PAYMENTS**

You promise to pay to Holder any amounts owed under this Agreement as follows:

**(A) Draw Period**

During the Draw Period, no later than the payment date specified in your Billing Statement, you must pay at least the Minimum Monthly Draw Period Payment. The "Minimum Monthly Draw Period Payment" is the greatest of: (1) the amount of accrued **FINANCE CHARGES**; or (2) $75.00.

**(B) Repayment Period**

During the Repayment Period, no later than the payment date specified in your Billing Statement you must pay at least the "Minimum Monthly Repayment Period Payment". The Minimum Monthly Repayment Period Payment is the greater of: (1) an amount equal to 1.5% of your Account Balance or (2) $75.00.

During the Draw and Repayment Periods, in no event will the minimum monthly payment fall below $75.00. If the Account Balance is less than $75.00, you must pay it in full.

The required minimum payment may not repay the outstanding balance by the end of the repayment period. If this happens, you will be required to make a single balloon payment at the end of the repayment period. Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time. You may be required to make payments out of other assets you own or find a lender (which may or may not be us) willing to lend you the money. If you refinance the balloon payment with us, you may have to pay some or all of the closing costs.

**7. FEES AND CHARGES**

You agree to pay the following additional fees and charges:

**(A) Annual Charge**

An annual fee of $60.00 will be charged to your account on April 1st of each year. The annual fee will be waived when the average monthly outstanding balance for the previous 12 months was $5,000 or more. If the account has been opened for 6 months or less by April 1 of any year, no fee will be charged.

**(B) Late Charge**

Your payment will be late if it is not received by us within **10 days of the "Payment Due Date" shown on your periodic statement.** If your payment is late you may be assessed a late charge of $45.00.

**(C) Other Prepaid Finance Charges:** You will be charged the following prepaid **FINANCE CHARGES** at the time your account is opened:

Payable To Others:

| | |
|---|---|
| Mortgage Broker Fee to **PRINZE CAPITAL GROUP** | $ |
| Processing Fee to **PRINZE CAPITAL GROUP** | $ |
| Underwriting Fee to CU Funding | $ 695.00 |
| Administration Fee to CU Funding | $ 795.00 |
| Overnight Delivery Fee to CU Funding | $ 65.00 |
| Closing/Escrow Fee to | $ |
| Doc Fee to CU Funding | $ 250.00 |

Payable To Cal State 9 Credit Union:

| | |
|---|---|
| Flood Certification | $ 15.00 |
| Tax Service Fee | $ 50.00 |
| Wire Transfer Fee to Cal State 9 Credit Union | $ 15.00 |

Case: 15-53504    Doc# 13    Filed: 12/21/15    Entered: 12/21/15 14:42:56    Page 13 of 70

**(D) Other Charges:** You also agree to pay the following fees and charges necessary to open your account:

Payable to Others:

| | | |
|---|---|---|
| Appraisal Fee to PRINZE CAPITAL GROUP | $ | |
| Credit Report Fee to CU Funding | $ | 13.00 |
| Notary Fees to | $ | |
| Recording Fee to | $ | 85.00 |
| Recording Request for Notice of Default | $ | 9.00 |
| Title Insurance to | $ | 100.00 |
| Document Preparation Fee to | $ | |
| Payable To Cal State 9 Credit Union: | | |
| Lenders Documentation Review Fee | $ | 40.00 |
| Membership Fee | $ | 15.00 |

**(E) Conditions Under Which Other Charges May be Imposed.** Your agree to pay all the other fees and charges to your Credit Line as set forth below:

**Returned Items.** You may be charged $15.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Fee to Stop Payment.** Your Credit Line Account may be charged $12.00 when you request a stop payment on your account.

**Miscellaneous Photocopying.** If you request a copy of any document, we may charge your Credit Line Account a Research Fee of $35.00 per hour plus Photocopy Fees of $.50 per copy whenever you request research and /or photocopies of checks or statements for purposes other than a billing error inquiry. However, if no research is required, a $3.50 per copy charge will be imposed for the time it takes us to located, copy, and mail the document to you. If your request is related to a billing error (see "Your Billing Rights" notice) and an error is found, we will reverse any photocopying charges.

**Scheduled Fee Changes.** Your Annual Membership Fee may increase annually commencing with the first anniversary of your Account by an amount not to exceed $5.00 per year. The amount of your annual fee will appear on the first periodic statement following the anniversary of your Account.

**Other Fee Increases.** The Returned Payment Fee, Stop Payment Fee and Research Fee applicable to your Account may increase annually effective August 1st of each year commencing with the first year your Account is opened. The amount of these fees will increase to the amount then in effect as reflected in the credit union's information on credit union services. You may obtain a copy of the credit union's current information or credit union's services by telephoning or sending a written request to the billing address shown on your periodic statement, or by telephoning or inquiring at the credit union office at which you opened your Account.

**Additional Security Interest Fees.** A Subordination Fee of $150.00 will be due at the time you request, and Lender agrees, to subordinate its lien in favor of a senior lienholder in order to facilitate your refinance of or additional borrowing increase to a prior lien. Lender is not obligated to agree to such a request; may deny your request to subordinate its lien; and may request that you either reduce the amount of your existing credit line or pay Lender in full for all amounts due. In addition, you may be required to pay a Beneficiary Statement Fee or a Payoff Demand Statement Fee of $25.00 as provided by Section 2943 of the California Civil Code at the time you authorize a future lender or title insurance company to obtain a statement of the condition or a statement of all amounts due under your line of credit.

**Lien Release Fees.** In addition to all other charges, you agree, to the extent not prohibited by law, to pay all fees for release of Lender's security interest in collateral securing this loan. You will pay these fees at the time the lien or liens are released. The estimated amount of these future lien release fees is $45.00.

**Other Charges.** Your Credit Line Account may be charged the following other charges: Modification Fee: A Modification Fee may be charged at the time you request a change to either the amount of your credit limit or maturity date of your line of credit. The amount of this other charge is $150.00.

Case: 15-53504   Doc# 13   Filed: 12/21/15   Entered: 12/21/15 14:42:56   Page 14 of 70

## 8. NOTICES

Unless applicable law requires a different method, any notice that must be given to you under this Agreement will be given by delivering it or mailing it by first class mail to the Property Address above or at a different address if you give Holder a notice of your different address. Any notice that must be given to Holder under this Agreement will be given by delivering it or mailing it by first class mail to the Holder at the address stated in Section 1(C) above or at a different address if you are given a notice of that different address.

## 9. SECURITY

The Account will be secured by a lien taken against your home pursuant to a separate Mortgage, Deed of Trust, or Security Deed ("Security Instrument") dated the same date as this Agreement. The Security Instrument requires you to take certain actions to protect your home, which is located at the address shown above ("Property"). You could lose the Property and your home if you do not meet the conditions of this Agreement or the Security Instrument. Some of the conditions of the Security Instrument are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 9 "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of the Secured Debt. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Debt in full. If Borrower fails to pay the Secured Debt in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

You also agree to obtain and maintain such insurance on the Property as Holder may require; you agree to maintain such insurance in the amounts and for the periods Holder requires. Unless prohibited by applicable law, the Account will be secured as well by proceeds of such insurance. You may obtain such insurance from the carrier of your choice, subject to Holder's right to disapprove your choice, which right will not be exercised unreasonably.

If you fail to keep the insurance required under this Section, Holder may obtain such insurance coverage at Holder's option and your expense, and Holder may charge you a fee to do so. Holder is under no obligation to purchase any particular type or amount of coverage; as such, you, your equity in the Property, or the contents of the Property may not be protected to the extent you desire. Any amount paid by Holder under this Section will be added as a Loan under this Agreement and be subject to the **FINANCE CHARGE**.

## 10. CREDIT AND PROPERTY INFORMATION

You agree to furnish personal financial information and information about the Property and your occupation of the Property reasonably requested by Holder from time to time. Such information must be furnished to Holder within a reasonable time but in no event later than 30 days after Holder's request. In addition, you authorize Holder, at Holder's expense, to make or have made credit inquiries, and you authorize any person to whom Holder makes such inquiries to furnish Holder with the requested information. You also authorize Holder to release information regarding the status and history of the Account to third persons, including without limitation credit bureaus, merchants, and financial institutions, to the extent permitted by applicable law.

## 11. ASSIGNMENT

Holder may assign or transfer this Agreement and the Security Instrument without notice to you. You may not assign or transfer your rights and obligations under this Agreement without Holder's written authorization; however, this Agreement is binding upon your heirs, successors, and legal representatives.

## 12. TAX DEDUCTIBILITY

You should consult a tax advisor regarding the deductibility of interest and charges under the Account.

## 13. DEFAULT

You will be in default under this Agreement if:

(A) You engage in fraud or material misrepresentation in connection with the Account or with any aspect of the Account, including without limitation your application for the Account and your occupancy of the Property;

(B) You do not meet the repayment terms under this Agreement;

Case: 15-53504   Doc# 13   Filed: 12/21/15   Entered: 12/21/15 14:42:56   Page 15 of 70

(C) Your action or inaction adversely affects the collateral for the Account (including without limitation the Property) or Holder's rights in the collateral under the Security Instrument, including without limitation: (i) your failure to maintain insurance as required under the Security Instrument; (ii) your transfer of the Property as provided in the Security Instrument; (iii) your failure to maintain the Property or use of the Property in a destructive manner; (iv) your commission of waste of the Property; (v) your failure to pay taxes due on the Property or your failure to act such that a lien superior to Holder's lien is filed against the Property; (vi) the death of all of you; (vii) the Property is taken by condemnation or eminent domain; (viii) a judgment is filed against you that subjects the Property to action that adversely affects Holder's interest in the Property; (ix) the creation of a lien on the Property without Holder's permission; or (x) a superior lien holder forecloses on the Property such that Holder's interest in the Property is adversely affected.

## 14. REMEDIES FOR DEFAULT

If you are in default, Holder may terminate the Account, require you to pay the entire outstanding Account Balance, and charge a termination fee and any collection fees unless otherwise prohibited from doing so by applicable law. Holder at Holder's option also may take one or more lesser actions. Such lesser actions may include without limitation reducing the Credit Limit. Holder may take action under this Section only after complying with any notice or cure provisions required under applicable law. In the event Holder elects not to terminate the Account or take lesser action when you are in default, Holder does not forfeit or waive Holder's right to do so at a later time or to do so if you are in default again.

## 15. SUSPENSION OF ACCOUNT AND REDUCTION OF CREDIT LIMIT

Unless otherwise prohibited from doing so by applicable law, Holder may temporarily suspend the Account or reduce the Credit Limit if:

(A) The value of the Property declines significantly below the Property's appraised value for purposes of the Account;

(B) Holder reasonably believes you will not be able to meet the repayment requirements under this Agreement due to a material change in your financial circumstances;

(C) You are in default of a material obligation of this Agreement or the Security Instrument; for purposes of this Agreement a material obligation will include without limitation your obligation to supply Holder with the credit and property information required under Section 10 of this Agreement;

(D) A governmental action prevents Holder from imposing the **ANNUAL PERCENTAGE RATE** or impairs Holder's security interest under the Security Instrument such that the value of the security interest is less than 120 percent of the Credit Limit;

(E) A regulatory agency has notified Holder that continued advances would constitute an unsafe practice;

(F) The **ANNUAL PERCENTAGE RATE** reaches the maximum rate permitted under this Agreement; or

(G) Any of you requests to do so; provided, that Holder may require that any such request be in writing and sent to Holder by certified mail, and that Holder may require that any request to reinstate the Account also be in writing and sent by all of you.

If Holder suspends the Account or reduces the Credit Limit, Holder will send you notice of Holder's decision as provided in Section 8 of this Agreement. Any request by you to reinstate the Account or the Credit Limit must be in writing and sent to Holder as provided in Section 8 of this Agreement.

## 16. CHANGING THE TERMS OF THIS AGREEMENT

Holder may not change the terms of this Agreement except under the following circumstances:

(A) Holder may change the Index and Margin if the original Index or any replacement index is no longer available. Any new Index must have a historical movement similar to the original Index and together with a new Margin must result in an **ANNUAL PERCENTAGE RATE** substantially similar to the **ANNUAL PERCENTAGE RATE** in effect at the time the original Index or replacement index became unavailable.

(B) Holder may make changes that you agree to in writing.

(C) Holder may make changes that unequivocally benefit you throughout the remaining term of the Account.

(D) Holder may make changes to insignificant terms of this Agreement.

Unless otherwise prohibited from doing so by applicable law, Holder may refuse to make additional Loans or reduce the Credit Limit whenever the Maximum **ANNUAL PERCENTAGE RATE** is reached.

## 17. CANCELING THE ACCOUNT

You may cancel the Account at any time by notifying Holder in writing as provided in Section 8 above. Cancellation of the Account by any of you will cancel the Account for all of you. However, Holder may release any of you from your obligations under this Agreement without releasing the remainder of you from your obligations.

If the Account is canceled or terminated for any reason, you will not be entitled to a refund of or a credit for any initial annual fees or other fees and charges payable under the Account, unless otherwise required by applicable law. In addition, you must return to Holder the Checks, and any other devices you may have to access the Account. Any

Case: 15-53504   Doc# 13   Filed: 12/21/15   Entered: 12/21/15 14:42:56   Page 16 of 70

further use of such devices may be considered fraudulent. Regardless of such cancellation or termination, you will remain obligated to repay the Account Balance in full, including any money advanced to you after the Account has been canceled or terminated.

Cal State 9 Credit Union has agreed to credit you $ 1,962.00 towards non-reoccurring closing costs at the time of your Home Equity Line of Credit Account is opened provided your Account credit line amount is equal to or greater than $30,000 and your initial advance is equal to or greater than $10,000. **If you close your Home Equity Line of Credit Account in less than three years from the opening date, you will be required to reimburse Cal State 9 Credit Union for the $ 1,962.00** closing cost credit you initially received as a credit against the non-reoccurring closing costs. The amount of the closing cost credit you receive will also be itemized on your HUD1 or HUD1A Estimated and Final Settlement Statement.

## 18. LOAN CHARGES

If this Agreement is subject to a law that sets maximum Loan charges, and that law is finally interpreted so that the **FINANCE CHARGE** or other Loan charges collected or to be collected in connection with the Account exceed the permitted limits, then: (a) any such charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from you that exceeded permitted limits will be refunded to you. Holder may choose to make this refund by reducing the principal owed under the Account or by making a direct payment to you. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge. Your acceptance of any such refund made by direct payment to you will constitute a waiver of any right of action you might have arising out of such overcharge.

## 19. SEVERABILITY

In the event that any provision or clause of this Agreement or the Security Instrument conflicts with applicable federal, state, or local law, such provision or clause will be considered changed to the extent permissible and necessary to comply with such law. Otherwise, such conflict will not affect other provisions of this Agreement or the Security Instrument that can be given effect without the conflicting provision.

## 20. YOUR BILLING RIGHTS-KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and Holder's responsibilities under the Fair Credit Billing Act.

#### Notify Holder In Case of Errors or Questions About Your Bill

If you think the Billing Statement is wrong, or if you need more information about a transaction on the Billing Statement, write Holder at the address listed on the Billing Statement. Write to Holder as soon as possible. Holder must hear from you no later than 60 days after Holder sent you the first Billing Statement on which the error or problem appeared. You can telephone Holder, but doing so will not preserve your rights.
In your letter, give Holder the following information:

(A) Your name and account number.

(B) The dollar amount of the suspected error.

(C) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized Holder to pay the Account automatically from your savings, checking, or other account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach Holder three business days before the automatic payment is scheduled to occur.

#### Your Rights and Holder's Responsibilities After Holder Receives Your Written Notice

Holder must acknowledge your letter within 30 days, unless Holder has corrected the error by then. Within 90 days, Holder must either correct the error or explain why Holder believes the Billing Statement was correct.

After Holder receives your letter, Holder cannot try to collect any amount you question or report you as delinquent. Holder can continue to bill you for the amount you question, including **FINANCE CHARGES**, and Holder can apply any unpaid amount against the Credit Limit. You do not have to pay any questioned amount while Holder is investigating, but you are still obligated to pay the parts of the Billing Statement that are not in question.

If Holder finds that Holder made a mistake on the Billing Statement, you will not have to pay any **FINANCE CHARGES** related to any questioned amount. If Holder did not make a mistake, you may have to pay **FINANCE CHARGES**, and you will have to make up any missed payments on the questioned amount. In either case, Holder will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that Holder thinks you owe, Holder may report you as delinquent. However, if Holder's explanation does not satisfy you and you write to Holder within ten days telling Holder that you still refuse to pay, Holder must tell anyone Holder reports you to that you have a question about the Billing Statement. And Holder must tell you the name of anyone Holder reported you to. Holder must tell anyone Holder reports you to that the matter has been settled between you and Holder when it finally is.

Case: 15-53504    Doc# 13    Filed: 12/21/15    Entered: 12/21/15 14:42:56    Page 17 of 70

If Holder does not follow these rules, Holder can't collect the first $50.00 of the questioned amount, even if the Billing Statement was correct.

## 21. COLLECTION COSTS

Holder may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate an automatic stay or injunction), and appeals. You will also pay any court costs, in addition to all other sums provided by law.

## 22. DELAY IN ENFORCEMENT

Holder may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If holder delays or waives any rights, Holder may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of Holder's right to terminate your account in the future if you have not paid.

## 23. PREPAYMENT

Subject to paragraph 17, you may prepay all or any amount owing under this Account at any time without penalty, except Holder will be entitled to receive all accrued **FINANCE CHARGES**, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Account. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to Cal State 9 Credit Union, P.O. Box 271768, Concord, CA 94527-1768.

## 24. TAX CONSEQUENCES

You understand that neither Holder, nor any of Holder's employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Account, including the deductibility of interest, and that neither Holder nor Holder's employees or agents will be liable in the event interest on your Account is not deductible. You should consult your own tax advisor for guidance on this subject.

## 25. NOTIFY US OF INACCURATE INFORMATION

Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy should be sent to Holder at the address on your periodic billing statement.

## 26. GOVERNING LAW

This Agreement will be governed by and interpreted in accordance with federal law and the laws of the State of California. This Agreement has been accepted by us in the State of California.

## 27. CHOICE OF VENUE

If there is a lawsuit, you agree upon Holder's request to submit to the jurisdiction of the courts of Contra Costa County, State of California.

## 28. ACKNOWLEDGEMENT

By signing this Agreement, you acknowledge that you have read this Agreement. By signing below, you agree to the terms and conditions of this Agreement. You also acknowledge and agree that you received a complete copy of this Agreement.

```
                    NOTICE TO BORROWER
        DO NOT SIGN THIS AGREEMENT/NOTE IF IT CONTAINS BLANK SPACES.
        ALL SPACES SHOULD BE COMPLETED BEFORE YOU SIGN.
```

_____ 8/16/06
- BORROWER - TINA PEREZ - DATE -

*[Sign Original Only]*

Borrower: TINA J PEREZ
Loan No: REDACTED
Date of Loan: August 8, 2006
Property Address: 4684 HOLYCON CIRCLE,
          SAN JOSECA95136

### ALLONGE

Cal State 9 Credit Union, a California Credit Union, does hereby pay to the order of
Bosco Credit LLC , its successors and assigns, without recourse all of its rights and
interests, effective as of May 16, 2008.

CAL STATE 9 CREDIT UNION

By:   _____
      Griselda Gonzalez
Its:  HELOC Manager

# EXHIBIT 2

REDACTED

**RECORDING REQUESTED BY**

Financial Title Company

**AND WHEN RECORDED MAIL TO**

Name    <u>Cal State 9 Credit Union</u>

Street
Address    <u>2300 Clayton Road #220</u>

   <u>Concord, CA 94520</u>

City,State
Zip

REDACTED

DOCUMENT:   19077488

Pages:   17

Fees      57.00

Taxes

Copies.

AMT PAID    57.00

BRENDA DAVIS

SANTA CLARA COUNTY RECORDER

Recorded at the request of

Financial Title Company

RDE #   001

8/24/2006

8:00 AM

(SPACE ABOVE THIS LINE FOR RECORDER'S USE)

# Deed of Trust

**DOCUMENT TITLE**

SEPARATE PAGE - PURSUANT TO GOVERNMENT CODE 27361.6

ttlepg

≈NCIAL TITLE COMPANY
ESCROW RECORDING/REQUESTED BY:
FINANCIAL TITLE COMPANY

AFTER RECORDING RETURN TO:

*CAL State 9 Credit Union*
*2300 Clayton Rd #220*
*Concord, Ca 94527-1768*

PREPARED BY:
NICOLE VILLEGAS

CAL STATE 9 CREDIT UNION

2300 CLAYTON RD # 220

CONCORD, CA 94527-1768

[Space Above This Line For Recording Data]

# VARIABLE INTEREST RATE REVOLVING LINE OF CREDIT
## DEED OF TRUST

PEREZ
LOAN #:
PIN:

## DEFINITIONS

**(A) "Security Instrument"** means this document, which is dated   AUGUST 8, 2006
together with all riders to this document.

**(B) "Borrower"** is ~~GILBERTO PEREZ AND TINA PEREZ, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHTS OF SURVIVORSHIP~~

 TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY   *TP*
Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is CAL STATE 9 CREDIT UNION

Lender is a **CREDIT UNION**                                  , organized and existing under the laws of the
State of                              . Lender's address is **2300 CLAYTON RD # 220,
CONCORD, CA 94527-1768**
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is CAL STATE 9 CREDIT UNION

**(E) "Secured Indebtedness"** means:

(1) The debt, interest, finance charges, and other fees and charges incurred under the terms of the Home Equity Line of Credit Agreement and Disclosure Statement ("HELOC") dated **AUGUST 8, 2006**         ; the HELOC matures on **AUGUST 20, 2031**
(2) Any advance made to Borrower or obligation incurred by Borrower pursuant to any contract or evidence of indebtedness benefiting Lender, regardless of whether such advance has been made or such obligation has been incurred in whole or in part as of the date of this Security Instrument.

**CALIFORNIA HELOC Deed of Trust**          Page 1 of 10                    **9/01**
DOCUEBW1                                                      **CALOCRS**
DOCUEBW1.VTX  09/21/2005

REDACTED

(3) Any sum paid and expense incurred by Lender under the terms of this Security Instrument.

**(F) "Credit Limit"** means the maximum aggregate amount of principal that may be secured by this Security Instrument at any one time. The Credit Limit is **$66,992.00** . Except to the extent prohibited by Applicable Law, the Credit Limit does not apply to interest, finance charges, and other fees and charges validly incurred by Borrower under this Security Instrument. The Credit Limit also does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Riders"** means all riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☒ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ Biweekly Payment Rider
☒ 1-4 Family Rider ☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state, and local statutes, regulations, ordinances, and administrative rules and orders (that have the effect of law) as well as applicable final, non-appealable judicial opinions.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Secured Indebtedness, and all renewals, extensions, and modifications of the Secured Indebtedness; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the HELOC. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of **SANTA CLARA** :

Assessor's Identification Number _____
*[Add if LOS ANGELES County]*
**SEE ATTACHED EXHIBIT A--LEGAL DESCRIPTION OF REAL PROPERTY, WHICH IS ATTACHED TO THIS DEED**

which currently has the address of **4684 HOLYCON CIRCLE**
[Street]
**SAN JOSE** , **CALIFORNIA 95136** ("Property Address"):
[City] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions also shall be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and shall defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

## ADVANCES

Any advances made under the HELOC may be made, repaid, and remade from time to time, subject to the limitations of the HELOC. Regardless of whether the Secured Indebtedness is reduced to a zero balance, this Security Instrument shall remain in effect until released or reconveyed.

REDACTED Case: 15-53504 Doc# 13 Filed: 12/21/15 Entered: 12/21/15 14:42:56 Page 24 of 70
Page 3 of 17 Created By: helennguyen Printed: 3/27/2015 11:51:53 AM PST

Any advances made in excess of the Credit Limit shall not be secured by this Security Instrument if prohibited by Applicable Law or, if not prohibited by Applicable Law, unless (i) Lender agrees to increase the Credit Limit and complies with any subsequent disclosure, rescission, and other requirements under Applicable Law and (ii) Borrower agrees to execute any documents Lender requires to evidence and secure the increase in the Credit Limit. Lender shall not be obligated in any way under this Security Instrument to increase the Credit Limit or to make additional or future loans or advances in any amount.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

     **1.**      **Payment of Secured Indebtedness; Performance of Obligations**. Borrower shall pay when due the Secured Indebtedness and shall perform all of Borrower's obligations under the HELOC and this Security Instrument.

     **2.**      **Charges; Liens**. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property that can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and the dues, fees, and assessments of a condominium association, homeowners association, or similar organization, if any.

Borrower shall make all payments and comply with all covenants as and when required by any mortgage, deed of trust, security agreement, or other lien document evidencing a lien that is prior to this Security Instrument and that is approved by Lender. Borrower shall not modify, extend, or increase the amount secured by such prior lien document without Lender's written consent.

Upon demand Borrower shall furnish to Lender satisfactory evidence of payment of such taxes, assessments, charges, fines, impositions, and prior liens.

Borrower shall promptly discharge any lien not approved by Lender that has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings that in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien that can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 2.

     **3.**      **Property Insurance**. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against fire, hazards included within the term "extended coverage," flood, and any other hazards including without limitation earthquakes, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences may change during the term of the HELOC. Borrower may obtain such insurance from the insurance carrier of Borrower's choice, subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard, or liability, and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 3 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

CALIFORNIA HELOC Deed of Trust           Page 3 of 10           9/01
DOCUEBW3                                                   CALOCRS
DOCUEBW3.VTX   09/21/2005

REDACTED    Case: 15-53504    Doc# 13    Filed: 12/21/15    Entered: 12/21/15 14:42:56    Page 25 of
Page 5 of 17          70          Created By: helennguyen    Printed: 3/27/2015 11:51:53 AM PST

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

**4.     Preservation, Maintenance, and Protection of the Property; Occupancy and Use of the Property; and Inspection**. Borrower shall not destroy, damage, or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value, due to its condition, such as would adversely affect Lender's security in the Property. Unless it is determined pursuant to Section 3 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower shall not be relieved of Borrower's obligation for the completion of such repair or restoration.

Borrower shall not materially change the present occupancy and use of the Property without Lender's written consent. Borrower shall not use the Property in an illegal manner or for any illegal use such as would subject the Property to seizure.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**5.     Protection of Lender's Interest in the Property and Rights Under this Security Instrument**. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien that may attain priority over this Security Instrument, or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions may include, but are not limited to: (a) paying any sums secured by a lien that has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including Lender's secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up

REDACTED

doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 5, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 5.

Any amounts disbursed by Lender under this Section 5 shall be Secured Indebtedness and shall be payable according to the terms of the HELOC.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing. If the Property is located in a condominium project or a planned unit development, Borrower shall perform all of Borrower's obligations under the covenants, by-laws, or regulations of the condominium project or planned unit development.

6. **Condemnation.** Borrower shall give Lender prompt notice of any condemnation or eminent domain proceeding or action pending or threatened against the Property and authorizes Lender to intervene in Borrower's name in any such proceeding or action. Borrower assigns to Lender any money awarded to Borrower pursuant to such proceeding or action, and such money shall be applied to the Secured Indebtedness, whether or not then due, with the excess, if any, paid to Borrower.

7. **Loan Charges.** If the HELOC is subject to a law that sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the HELOC exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits shall be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the HELOC or by making a direct payment to Borrower. If a refund reduces principal, the reduction shall be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the HELOC). Borrower's acceptance of any such refund made by direct payment to Borrower shall constitute a waiver of any right of action Borrower might have arising out of such overcharge.

8. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement shall satisfy the corresponding requirement under this Security Instrument.

9. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. In the event that any provision or clause of this Security Instrument or the HELOC conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the HELOC that can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

10. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the HELOC (a "co-signer"): (a) is co-signing this Security

REDACTED    Case: 15-53504    Doc# 13    Filed: 12/21/15    Entered: 12/21/15 14:42:56    Page 27 of
                                          Page 8 of 17        Created By: helennguyen    Printed: 3/27/2015 11:51:53 AM PST
                                              70

Instrument only to mortgage, grant, and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear, or make any accommodations with regard to the terms of this Security Instrument or the HELOC without the co-signer's consent.

Subject to the provisions of Section 11, any successor to the interests of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.

**11.    Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 11, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of the Secured Indebtedness. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 8 within which Borrower must pay the Secured Indebtedness in full. If Borrower fails to pay the Secured Indebtedness in full prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**12.    Hazardous Substances.** As used in this Section 12: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, or allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) that creates an Environmental Condition, or (c) that, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower promptly shall give Lender written notice of (a) any investigation, claim, demand, lawsuit, or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release, or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use, or release of a Hazardous Substance that adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority or any private party that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**13.    Escrow for Taxes and Insurance.** Unless otherwise provided in a separate agreement, Borrower shall not be required to pay in escrow to Lender funds for taxes, insurance, and other assessments.

**14.    Default.** Borrower shall be in default under the HELOC and this Security Instrument if without limitation any of the following occur: (a) Borrower engaged or engages in fraud or material misrepresentation in

REDACTED    Case: 15-53504    Doc# 13    Filed: 12/21/15    Entered: 12/21/15 14:42:56    Page 28 of
                                                    Page 7 of 17
                                              70
Created By: helennguyen    Printed: 3/27/2015 11:51:53 AM PST

connection with any aspect of the HELOC or this Security Instrument, including without limitation Borrower's application for the HELOC and Borrower's occupancy of the Property; (b) Borrower does not meet repayment terms under the HELOC; (c) Borrower's action or inaction adversely affects the collateral for the HELOC (including without limitation the Property) or Lender's rights in the collateral including without limitation: (i) Borrower's failure to maintain the insurance required under Section 3 of this Security Instrument; (ii) Borrower's transfer of the Property as provided in Section 11 of this Security Instrument; (iii) Borrower's failure to maintain the Property or use of the Property in a destructive manner; (iv) Borrower's commission of waste of the Property; (v) Borrower's failure to pay taxes due on the Property or Borrower's failure to act such that a lien superior to Lender's lien is filed against the Property; (vi) the death of all Borrowers; (vii) the Property is taken by condemnation or eminent domain; (viii) a judgment is filed against Borrower that subjects the Property to action that adversely affects Lender's interest in the Property; (ix) the creation of a lien on the Property without Lender's permission; or (x) a superior lien holder forecloses on the Property such that Lender's interest in the Property is adversely affected.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**15.** **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 11 unless Applicable Law provides otherwise). The notice shall comply with Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of the Secured Indebtedness without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 15, including without limitation reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give or cause Trustee to give all notices required by Applicable Law in the time and manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property to the highest bidder at public auction at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all of any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale. Trustee shall deliver to the purchaser Trustee's deed conveying the Property without covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including without limitation reasonable Trustee's and attorneys' fees; (b) to the Secured Indebtedness; and (c) any excess to the person or persons legally entitled to it.

If Borrower is in default, Lender may elect not to accelerate the Secured Indebtedness but instead may refuse to make additional advances or reduce the Credit Limit. Even if Lender elects not to exercise any remedy under this Security Instrument, Lender does not forfeit or waive Lender's right to do so at a later time or to do so if Borrower is in default again.

**16.** **Reconveyance.** Upon payment in full of the Secured Indebtedness, Lender shall request Trustee to reconvey the Property and surrender this Security Instrument and all documents evidencing the Secured Indebtedness to Trustee. Lender shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**17.** **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee, and Borrower, the book and page where this Security Instrument is recorded, and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall

CALIFORNIA HELOC Deed of Trust       Page 7 of 10       9/01
DOCUEBW7
DOCUEBW7.VTX   09/21/2005       CALOCRS

REDACTED    Case: 15-53504    Doc# 13    Filed: 12/21/15    Entered: 12/21/15 14:42:56    Page 29 of
Page 8 of 17    Created By: helenhnguyen5    Printed: 3/27/2015 11:51:53 AM PST
70

succeed to all the title, powers, and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**18.** **Statement of Obligation Fee**. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**19.** **Property Insurance**. The third paragraph of Section 3 is revised to read as follows; all other terms and provisions shall remain unchanged.

> All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the HELOC up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee, and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the HELOC up to the amount of the outstanding loan balance.

REDACTED      Case: 15-53504     Doc# 13     Filed: 12/21/15     Entered: 12/21/15 14:42:56     Page 30 of 70

Page 9 of 17      Created By: helennguyen      Printed: 3/27/2015 11:51:54 AM PST

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Riders executed by Borrower and recorded with it. Borrower also acknowledges receipt of a copy of this Security Instrument.

_____

- BORROWER - TINA PEREZ - DATE -

_____

GILBERTO PEREZ - DATE -

REDACTED

-------------------------------------[Space Below This Line For Acknowledgment]-------------------------------------

State of _California_ ) ss
County of _Santa Clara_ ) ss

On _8/16/06_ , before me, _Patricia K Knox,_ ,
a Notary Public, personally appeared

_Tina Perez_

☐ personally known to me

**OR**

☒ proved to me on the basis of satisfactory evidence

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in her/his/their authorized capacity, and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Patricia K Knox_
_____
Notary Public

[Seal]
_Patricia K. Knox_
_____
(Printed Name)

My commission expires:

_March 16, 2008_

PATRICIA K. KNOX
Commission # 1476961
Notary Public - California
Santa Clara County
My Comm. Expires Mar 16, 2008

**CALIFORNIA HELOC Deed of Trust**      Page 10 of 10      9/01
DOCUEBW10      CALOCRS
DOCUEBWA.VTX   09/21/2005

REDACTED

# ADJUSTABLE RATE RIDER
## (Prime Rate Index — Maximum Rate Cap)

PEREZ
LOAN #:

THIS ADJUSTABLE RATE RIDER is made **AUGUST 8, 2006** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Cal State 9 Credit Union (the "Lender") of the same date and covering the property described in Security Instrument and located at:

**4684 HOLYCON CIRCLE, SAN JOSE, CA 95136**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of **10.750** %. The Note provides for changes in the interest rate and the monthly payments as follows:

**(1)    Change Dates**

The interest rate I will pay may change quarterly on the first day of January, April, July and October. Each date on which my interest rate could change is called a "Change Date"

**(2)    The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the Prime Rate published in the Money Rates column of *The Wall Street Journal*. When a range of rates has been published the lowest rate will be used. The most recent Index figure available as of the last business day of the month prior to the most recent Change Date is called the "Current Index."

**(3)    Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **2.500** to the Current Index. Subject to the limits stated in Section A(4) below, this amount will be my new interest rate until the next Change Date.

DOCUFW51
DOCUFW51.VTX 04/12/2005

Page 1 of 2

REDACTED

**(4)     Limits on Interest Rate Changes**

There is no limit on the amount by which the interest rate may change at any Change Date or during any one-year period. The maximum interest rate that can apply is 18.000% or the maximum permitted by law, whichever is less.

**(5)     Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(6)     Notice of Changes**

If you have a balance owing on your HELOC or have any account activity, you will be sent a periodic statement. Your statement will identify the Effective Interest Rate for your Note, the Minimum Payment you must make for that billing period, and the date it is due. Your statement will also include the telephone number of a person who will answer any questions you may have.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____  8/16/06
- BORROWER - TINA PEREZ - DATE -

_____
GILBERTO PEREZ - DATE -

REDACTED

# 1-4 FAMILY RIDER

### (Assignment of Rents)

PEREZ
LOAN #:

THIS 1-4 FAMILY RIDER is made this **8TH** day of **AUGUST, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to **CAL STATE 9 CREDIT UNION**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: **4684 HOLYCON CIRCLE, SAN JOSE, CA 95136**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

MULTISTATE 1-4 FAMILY RIDER
DOCUHXXI
DOCUHXX1.VTX 09/20/2005

*(Page 1 of 3)*

REDACTED

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 15 is deleted.

**F. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**G. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time

REDACTED   Case: 15-53504   Doc# 13   Filed: 12/21/15   Entered: 12/21/15 14:42:56   Page 36 of
70
Page 15 of 17   Created By: helenhnguyen   Printed: 3/27/2015 11:51:54 AM PST

when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**H. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_Tina Perez_    8/16/06

\- BORROWER - TINA PEREZ / DATE -

~~GILBERTO PEREZ / / DATE /~~

MULTISTATE 1-4 FAMILY RIDER
DOCUHXX3
DOCUHXX3.VTX  09/20/2005

*(Page 3 of 3)*

REDACTED



REDACTED

# LEGAL DESCRIPTION

The land referred to in this Report is described as follows:

LOT 125, AS SHOWN ON THAT CERTAIN MAP ENTITLED, "TRACT NO. 4968", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON MAY 19, 1971 IN BOOK 283 OF MAPS, AT PAGES 42 AND 43.

EXCEPTING THEREFROM ALL OIL, GAS ASPHALTUM, MINERAL AND OTHER HYDROCARBON SUBSTANCES AND ALL KINDRED SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND BUT SAID EXCEPTION SHALL BE WITHOUT THE RIGHT TO ENTER UPON THE SURFACE OF SAID LAND OR USE OF THE SURFACE FOR ANY PURPOSE.

ALSO EXCEPTING THEREFROM THE UNDERGROUND WATER OR RIGHTS THERETO WITH NO RIGHT OF SURFACE ENTRY, AS GRANTED TO SAN JOSE WATER WORKS, A CALIFORNIA CORPORATION, BY DEED RECORDED MAY 28, 1971 IN BOOK 9351 OF OFFICIAL RECORDS, PAGE 535.

City of San Jose, County of Alameda, State of California

APN: REDACTED

# EXHIBIT 3

RECORDING REQUESTED BY:
Cal State 9 Credit Union

WHEN RECORDED MAIL TO:

Orion Financial Group, Inc.          oration
2860 Exchange Blvd. Ste 100
Southlake, TX 76092

DOCUMENT: 19916497                    Pages  2

Fees ...            14 00
Taxes
Copies
AMT PAID            14 00

REGINA ALCOMENDRAS           RDE # 004
SANTA CLARA COUNTY RECORDER  7/11/2008
Recorded at the request of   2:59 PM
Credit Union

Loan Number:  REDACTED            SPACE ABOVE THIS LINE FOR RECORDER'S USE
County: Santa Clara

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned grants, assigns and transfers to: BOSCO CREDIT LLC, all beneficial interest under that certain Variable Interest Rate Revolving Line Of Credit Deed Of Trust dated August 8, 2006, executed by TINA PEREZ, Trustor(s), to Cal State 9 Credit Union as Trustee, and recorded August 24, 2006, as Instrument No. 19077488 and of the Official Records in the office of the County Recorder of Santa Clara County, California, describing land therein as:

See Exhibit A-Legal Description attached hereto and made a part hereof.

And more commonly known as 4684 HOLYCON CIRCLE, SAN JOSE, CALIFORNIA, 95136

TOGETHER with the Home Equity Line of Credit Agreement and Disclosure Statement or Notes therein described or referred to, together with all modifications thereto, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Dated  May 27, 2008                 Cal State 9 Credit Union

Orion Financial Group Inc.
REDACTED                            *Sarah Leal*

PEREZ, TINA                         By: Sarah Leal
        FCMC/OPD BOSCO              HELOC Department Assistant Manager
BOSCO CREDIT LLC            REDACTED

STATE OF CALIFORNIA        )
COUNTY OF CONTRA COSTA )

On May 27, 2008 before me, Cherilyn D. G. Lewis, a Notary Public, personally appeared Sarah Leal, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____ (seal)
Notary Name:              Cherilyn D. G. Lewis
Notary Telephone Number:   925-363-2757
Notary Registration Number:   1541314
Notary Commission Expiration:   Jan. 3, 2009
Notary County-Principal place of business:  Contra Costa County

CHERILYN D.G. LEWIS
Commission # 1541314
Notary Public - California
Contra Costa County
My Comm. Expires Jan 3, 2009

EXHIBIT A

LOAN NUMBER REDACTED

## LEGAL DESCRIPTION

The land referred to in this Report is described as follows:

LOT 125, AS SHOWN ON THAT CERTAIN MAP ENTITLED, "TRACT NO. 4968", WHICH MAP WAS FILED FOR RECORD IN THE OFFICE OF THE RECORDER OF THE COUNTY OF SANTA CLARA, STATE OF CALIFORNIA, ON MAY 19, 1971 IN BOOK 283 OF MAPS, AT PAGES 42 AND 43.

EXCEPTING THEREFROM ALL OIL, GAS ASPHALTUM, MINERAL AND OTHER HYDROCARBON SUBSTANCES AND ALL KINDRED SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND BUT SAID EXCEPTION SHALL BE WITHOUT THE RIGHT TO ENTER UPON THE SURFACE OF SAID LAND OR USE OF THE SURFACE FOR ANY PURPOSE.

ALSO EXCEPTING THEREFROM THE UNDERGROUND WATER OR RIGHTS THERETO WITH NO RIGHT OF SURFACE ENTRY, AS GRANTED TO SAN JOSE WATER WORKS, A CALIFORNIA CORPORATION, BY DEED RECORDED MAY 28, 1971 IN BOOK 9351 OF OFFICIAL RECORDS, PAGE 535.

City of San Jose, County of Alameda, State of California

APN: REDACTED



Case: 15-53504 Doc# 13 Filed: 12/21/15 Entered: 12/21/15 14:42:56 Page 41 of 70

# EXHIBIT  4

# UNITED STATES BANKRUPTCY COURT
## Northern District of California

In re:

TINA MARIE JIMENEZ

_____/

Debtor(s)

Case No.

Chapter 13 Plan

1. The future earnings of the Debtor(s) are submitted to the supervision and control of the Trustee, and the Debtor(s) will pay to the Trustee the sum of $805 each month.

Initial attorneys fees are requested in the amount of $4,650.  ☐ Debtor(s) elect a voluntary wage order.

2. From the payments received, the Trustee will make disbursements as follows:
   (a) On allowed claims for expenses of administration required by 11 U.S.C. Sec. 507(a)(2) in deferred payments.
   (b) On allowed secured claims, which shall be treated and valued as follows:

| Name | Value of Collateral | Estimated Mortgage/ Lease Arrears | Adequate Protection Payments (If specified) | Interest Rate (If specified) |
|---|---|---|---|---|
| Bosco Credit LLC/Franklin Credit Management Corp. | 695,000 | 27,763 | 10 | 0.00% |
| Portfolio Recovery Associates LLC | 695,000 | n/a | 10 | 10.00% |
| Nationstar Mortgage | 695,000 | 1,905 | 10 | 0.00% |
| Danelle Casco | 695,000 | 5,614 | 10 | 0.00% |

[The valuations shown above will be binding unless a timely objection to confirmation is filed.  Secured claims will be allowed for the value of the collateral or the amount of the claim, whichever is less, and will be paid the adequate protection payments and the interest rates shown above.  If an interest rate is not specified, 7% per annum will be paid.  The remainder of the amount owing, if any, will be allowed as a general unsecured claim paid under the provisions of paragraph 2(d).]

   (c) On allowed priority unsecured claims in the order prescribed by 11 U.S.C. Sec. 507.
   (d) On allowed general unsecured claims as follows:
      X  at a rate of 100.00  cents on the dollar.  The estimated term of the plan is 60  months.  (Percentage Plan)
      __ the sum of $_____ payable over _____ months, distributed pro rata, in amounts determined after allowed administrative, secured and priority unsecured claims are paid.  The plan payments will continue at the highest monthly payment provided in paragraph 1 as necessary to pay all allowed administrative, secured and priority unsecured claims within sixty months of the petition date.  (Pot Plan)

3. The debtor(s) elect to reject the following executory contracts or leases and surrender to the named creditor(s) the personal or real property that serves as collateral for a claim.  The debtor(s) waive the protections of the automatic stay and consent to allow the named creditor(s) to obtain possession and dispose of the following identified property or collateral without further order of the court.  Any allowed unsecured claim for damages resulting from the rejection will be paid under paragraph 2(d).

4. The Debtor(s) will pay directly the following fully secured creditors and lessors or creditors holding long-term debt:

| Name | Monthly Payment | Name | Monthly Payment |
|---|---|---|---|
| Bosco Credit LLC/ Franklin Credit Management Corp. | $410.47 | Nationstar Mortgage | $1904.57 |
| Danelle Casco | $50.57 | | |

5. The date this case was filed will be the effective date of the plan as well as the date when interest ceases accruing on unsecured claims against the estate.

6. The Debtor(s) elect to have property of the estate:
   __ revest in the debtor(s) at such time as a discharge is granted or the case is dismissed.
   X  revest in the debtor(s) upon plan confirmation.  Once property revests, the Debtor(s) may sell or refinance real or personal property without further order of the court, upon approval of the Chapter 13 Trustee.

7. The debtor(s) further propose, pursuant to 11 U.S.C. Sec. 1322(b):  The claims of unsecured creditors shall be paid 100 cents on the dollar with .23% annual interest accruing thereon.

Dated: 11/4/15

Debtor, TINA MARIE JIMENEZ

Rev. 12/06

# EXHIBIT 5

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    NORTHERN DISTRICT of CALIFORNIA | | **PROOF OF CLAIM** |
|---|---|---|

| Name of Debtor:<br><br>Tina Marie Jimenez aka Tina M. Jimenez Perez aka<br>Tina M. Perez aka Tina J. Perez | Case Number:<br><br>15-53504 | |
|---|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br><br>Bosco Credit LLC | | **COURT USE ONLY** |
|---|---|---|

| Name and address where notices should be sent:<br><br>Franklin Credit Management Corp<br>PO Box 2301<br>Jersey City, NJ 07301<br><br>Telephone number: 800-650-7162    email: bk.info@franklincredit.com | ☐ Check this box if this claim amends a previously filed claim.<br><br>**Court Claim Number:** _____<br>(*If known*)<br><br>Filed on: _____ |
|---|---|

| Name and address where payment should be sent (if different from above):<br><br>Franklin Credit Management Corp<br>PO Box 5147<br>Carol Stream, IL 60197-5147<br><br>Telephone number: 800-650-7162    email: bk.info@franklincredit.com | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars. |
|---|---|

**1. Amount of Claim as of Date Case Filed:**    $ 85,189.43

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Money loaned.
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br>1572 | **3a. Debtor may have scheduled account as:**<br><br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br><br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:** 4684 Holycon Circle San Jose, CA 95136

**Value of Property:** $ _____

**Annual Interest Rate** 5.00 % ☐ Fixed or ☑ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$ 27,829.14

**Basis for perfection:** Recorded Deed of Trust

**Amount of Secured Claim:**    $ 85,189.43

**Amount Unsecured:**    $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

| ☐ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B). | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4). | ☐ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5). | **Amount entitled to priority:** |
|---|---|---|---|
| ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7). | ☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8). | ☐ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__). | $ _____ |

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

◻ I am the creditor.     ◻ I am the creditor's authorized agent.     ◻ I am the trustee, or the debtor,     ◻ I am a guarantor, surety, indorser, or other codebtor.
                                                                       or their authorized agent.         (See Bankruptcy Rule 3005.)
                                                                       (See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:   Mark T. Domeyer
Title:        Attorney for Creditor
Company:      The Wolf Firm, A Law Corporation
Address and telephone number (if different from notice address above):
2955 Main Street, Second Floor
Irvine, CA 92614                                      (Signature)                                          11/30/2015
                                                                                                           (Date)

Telephone number: 949-720-9200     email: wdk@wolffirm.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system

(www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

**Name of debtor:** Tina Marie Jimenez

**Case number:** 15-53504

**Name of creditor:** Bosco Credit LLC

**Last four digits** of any number you use to identify the debtor's account: 1 5 7 2

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due**        (1) $ 64,433.11

2. **Interest due**

| Interest rate | From<br>mm/dd/yyyy | To<br>mm/dd/yyyy | Amount |
|---|---|---|---|
| 5.000 % | 09/20/2010 | 11/04/2015 | $ 17,920.85 |
| % | | | $ |
| % | | | + $ |
| **Total interest due as of the petition date** | | | $ 17,920.85 |

Copy total here ▶ (2) + $ 17,920.85

3. **Total principal and interest due**        (3) $ 82,353.96

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. **Late charges** | See Attached Late Fees Breakdown | (1) | $ 2,790.47 |
| 2. **Non-sufficient funds (NSF) fees** | | (2) | $ |
| 3. **Attorney's fees** | | (3) | $ |
| 4. **Filing fees and court costs** | | (4) | $ |
| 5. **Advertisement costs** | | (5) | $ |
| 6. **Sheriff/auctioneer fees** | | (6) | $ |
| 7. **Title costs** | | (7) | $ |
| 8. **Recording fees** | | (8) | $ |
| 9. **Appraisal/broker's price opinion fees** | | (9) | $ |
| 10. **Property inspection fees** | | (10) | $ |
| 11. **Tax advances (non-escrow)** | | (11) | $ |
| 12. **Insurance advances (non-escrow)** | | (12) | $ |
| 13. **Escrow shortage or deficiency** (Do not include amounts that are part of any installment payment listed in Part 3.) | | (13) | $ |
| 14. **Property preservation expenses. Specify:**_____ | | (14) | $ |
| 15. **Other. Specify:**_____ | | (15) | $ |
| 16. **Other. Specify:**_____ | | (16) | $ |
| 17. **Other. Specify:**_____ | | (17) | $ |
| 17a.**Other. Specify:**_____ | | (17a) | $ |
| 17b.**Other. Specify:**_____ | | (17b) | $ |
| 17c.**Other. Specify:**_____ | | (17c) | $ |
| 18. **Total prepetition fees, expenses, and charges.** Add all of the amounts listed above. | | (18) | $ 2,790.47 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☑ No

☐ Yes     Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

---

1. **Installment payments due**

   Date last payment received by creditor     11/05/2010

   mm/dd/yyyy

   Number of installment payments due     (1)     61

2. **Amount of installment payments due**

   | | | | | |
   |---|---|---|---|---|
   | 61 | installments @ | 410.47 | $ | 25,038.67 |
   | | installments @ | 0.00 | $ | 0.00 |
   | | installments @ | 0.00 | $ | 0.00 |
   | | installments @ | 0.00 | $ | 0.00 |
   | | installments @ | 0.00 | $ | 0.00 |
   | | installments @ | 0.00 | $ | 0.00 |
   | | installments @ | 0.00 | $ | 0.00 |

   **Total installment payments due as of the petition date**     $ 25,038.67     Copy total here ▶     (2) $ 25,038.67

3. **Calculation of cure amount**

   <u>Add</u> **total prepetition fees, expenses, and charges**     Copy total from Part 2 here ▶     + $ 2,790.47

   <u>Subtract</u> **total of unapplied funds** (funds received but not credited to account)     − $ _____

   <u>Subtract</u> **amounts for which debtor is entitled to a refund**     − $ _____

   **Total amount necessary to cure default as of the petition date**     (3) $ 27,829.14

   Copy total onto Item 4 of Proof of Claim form

806-3154          FGW

PROOF OF SERVICE

RE:         Tina Marie Jimenez

CASE NO.:     15-53504

    I declare that I am employed in the County of Orange, State of California.  I am over the age of eighteen years and not a party to the within action.  My business address is 2955 Main Street, Second Floor, Irvine, CA   92614.  On <u>November 30, 2015</u> I served a **PROOF OF CLAIM** on each of the interested parties by placing a true copy thereof in a sealed envelope with postage thereon fully prepaid in the United States mail at Irvine, California, addressed as follows:

<div align="center">
SEE ATTACHED LIST MARKED AS<br>
EXHIBIT "1" AND INCORPORATED<br>
HEREIN BY REFERENCE
</div>

    I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on <u>November 30, 2015</u>, at Irvine, California.

<u>/S/ Francis G. Wambu</u>
Francis G. Wambu

RE:   Tina Marie Jimenez
CASE NO.:   15-53504

**Debtor:**
Tina Marie Jimenez
4684 Holycon Circle
San Jose, CA 95136

**Debtor's Counsel:**
James S.K. Shulman
Law Offices of James Shulman
1501 The Alameda
San Jose, CA 95126

**Chapter 13 Trustee:**
Devin Derham-Burk
P.O. Box 50013
San Jose, CA  95150-0013

**U.S. Trustee:**
Office of the U.S. Trustee - San Jose
U.S. Federal Bldg.
280 South First Street, Room 268
San Jose, CA 95113-3004

# EXHIBIT 6

**PACIFIC COAST TITLE**

RECORDING REQUESTED BY:
**Lender Processing Services Default Title & Closing**

WHEN RECORDED MAIL TO:
**The Wolf Firm**
2955 Main Street, 2nd Floor
Irvine, California 92614
(949) 720-9200
(949) 608-0130 (Foreclosure Fax No.)

DOCUMENT: **23053157**

23053157

| Pages: | 15 |
|---|---|
| Fees. . . . | 67.00 |
| Taxes. . . | .00 |
| Copies . . | .00 |
| AMT PAID | 67.00 |

REGINA ALCOMENDRAS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Pacific Coast Title - Simplifi

RDE # 026
8/14/2015
09:34 AM

Trustee Sale No. **15-0881-11**      Title Order No..**150149023-CA-VOI**

SPACE ABOVE THIS LINE FOR RECORDER'S USE
APN: **462-28-008**

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**PLEASE NOTE THAT PURSUANT TO CIVIL CODE § 2923.3(c)(1) THE ABOVE STATEMENT IS REQUIRED TO APPEAR ON THIS DOCUMENT BUT PURSUANT TO CIVIL CODE § 2923.3(a) THE SUMMARY OF INFORMATION IS NOT REQUIRED TO BE RECORDED OR PUBLISHED AND THE SUMMARY OF INFORMATION NEED ONLY BE MAILED TO THE MORTGAGOR OR TRUSTOR**

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

   **This amount is $26,462.73 as of 8/11/2015, and will increase until your account becomes current.**

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that

you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

> **Bosco Credit LLC**
> c/o The Wolf Firm, A Law Corporation
> 2955 Main Street, 2nd Floor
> Irvine, California 92614
> Attn: Foreclosure Department Phone: (949) 720-9200 /
> Fax (949) 608-0130

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

# REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT: The Wolf Firm, A Law Corporation** is the duly appointed Trustee, Substituted Trustee, or acting as agent for the beneficiary under a Deed of Trust dated **8/8/2006**, executed by **TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor(s), to secure certain obligations in favor of **CAL STATE 9 CREDIT UNION, A CREDIT UNION**, as beneficiary, recorded **8/24/2006**, as Instrument No. **19077488** of Official Records in the Office of the Recorder of **Santa Clara** County, California, **As more fully described on said Deed of Trust.**

T.S. No.15-0881-11   Title Order No. **150149023-CA-VOI**

Including the note(s) for the sum of **$66,992.00**; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the beneficiary; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The full installment due on 10/20/2010 and all subsequent payments, together with any late charges, delinquent taxes, insurance premiums, impounds and advances; senior liens, Loan Modifications, Forbearance Agreements and encumbrances which are delinquent or become delinquent and any attorney's fees and court costs arising from the beneficiary's protection of its security must be cured as a condition of reinstatement.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for sale, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

**A copy of the declaration required by either California Civil Code section 2923.55(c) or alternatively by section 2923.5(b), is attached hereto and incorporated herein by reference.**

Dated: 8/11/2015

**THE WOLF FIRM, A LAW CORPORATION, AS AGENT FOR THE BENEFICIARY BY**

By: _____

**Renae C. Murray, Trustee Sale Officer**

**The Wolf Firm**, IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

## Notice of Default Declaration

### (California Civil Code Section 2923.5(b))

Borrower(s): TINA PEREZ

Property Address: 4684 HOLYCON CIRCLE, SAN JOSE, CA 95136

Loan No.: XXXXXX1572

In respect to the above referenced loan, the undersigned Mortgage Servicer hereby declares, under the laws of the State of California, as follows:

1.    ☐ The Mortgage Servicer has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with California Civil Code Section 2923.5 (a) (2). Compliance was completed on _____.

2.    ☑ The Mortgage Servicer has tried with due diligence, and in compliance with California Civil Code Section 2923.5 (e), to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure but was unable to contact the borrower. Compliance was completed on _6/4/2015_.

3.    ☐ The Mortgage Servicer was not required to comply with California Civil Code Section 2923.5 because:

> ☐ The individual does not meet the definition of "borrower" as described in California Civil Code Section 2920.5(c).

> ☐ The deed of trust being foreclosed is not a first lien deed of trust secured by owner-occupied residential real property containing no more than four dwelling units as described in California Civil Code Section 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence and that the borrower's loan status and loan information have been reviewed to substantiate the borrower's default and the right to foreclose.

Date: _6/12/15_

Bosco Credit LLC *[Enter name of company]*

Mortgage Servicer

_____ *[Sign here]*

By: Thomas Axon *[Print name]*

Its: Managing Member *[Enter position of person signing]*

Summary of Notice of Default

NOTICE OF DEFAULT
SUMMARY OF KEY INFORMATION

The attached notice of default was sent to TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, in relation to 4684 HOLYCON CIRCLE, SAN JOSE, CA 95136

This property may be sold to satisfy your obligation and any other obligation secured by the deed of trust or mortgage that is in default. TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY has, as described in the notice of default, breached the mortgage or deed of trust on the property described above.

IMPORTANT NOTICE: IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date the attached notice of default may be recorded (which date of recordation appears on the notice).

This amount is $26,462.73 as of 8/11/2015 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

Bosco Credit LLC
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

If you would like additional copies of this summary, you may obtain them by calling (949) 720-9200.

## 違約通知
## 關鍵信息摘要

**本文中包含有關4684 HOLYCON CIRCLE, SAN JOSE, CA 95136 的違約通知發送給TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY。**

TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY
**如違約通知中所描述，違反了上述房產的抵押貸款或產權契約。**

**重要注意事項**：**如果你的房產因為你逾期未付款而進入法拍程序，可能不經任何法庭行動而被出售。你可能有權利在法律允許的恢復賬戶時間內**，支付你所有的逾期款項，加上應付的成本和**費用，使你的帳戶保持良好信譽。**
**時間通常是確定你財產出售日期的五個工作日之前。法拍日期要到本文中包含的違約通知被記錄在案（記錄日期出現在通知上）之后的90天，才可能確定。**

**這一金額在$26,462.73 時為8/11/2015，並會增加，直到你的帳戶回歸正常。**

**當你的房產進入法拍程序，你仍須支付應付票據和產權契約或抵押貸款的其它付款義務（如保險費和稅金）。如果你沒有支付接下來的貸款，房地產稅，或財產保險及其它應付票據和產權契約或抵押貸款所要求的付款義務，受益人或抵押權人可以堅持要求你履行這些義務，以恢復你的帳戶信譽。此外，受益人或抵押權人可以以恢復你的帳戶為條件，要求你提供已經付清需優先處理的放置在你產權上的債務，房地產稅及財產保險保費的可靠書面証據。**

**一旦你書面申請，受益人或抵押權人會提供給你分類支付的全部帳單金額。雖然要求全額付款，你可以不用支付賬戶中的全部未付款，但你必須支付所有已逾期的款項。但是，你和你的受益人或抵押權人在發布法拍書面通知前（本通知被記錄在案的3個月后），可以以書面形式相互同意，其中包括（1）提供更多的時間來轉讓房產及以其它方式糾正違約，或（2）建立付款時間表以糾正違約，或兩者兼而有之。**

**當本通知第一段中提到的時間段到期，如果法拍未進行，或者你和你的債權人之間有單獨的書面協議允許更長的時間，你隻有在支付你債權人所要求的全部金額后，才有權利停止債權人出售你的房產。**

**如果要了解必須支付的款項或安排支付以停止法拍，或者要了解你的房產進入法拍程序的其他原因，請聯系：**
Bosco Credit LLC
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

**如果你有任何疑問，應咨詢律師及可能為你的貸款提供擔保的政府機構。**

**盡管事實上你的房產已進入法拍程序，你可以上市出售你的房產。隻要出售程序在法拍程序結束之前完成即可。**

**請記住，如果你不迅速採取行動，你可能失去法律權利。**

**如果你想獲得更多的本摘要副本，請撥打下列電話(949) 720-9200。**

<div align="center">

채무 불이행 통지서
주요 정보 요약

</div>

첨부된 채무 불이행 통지서는**TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**
에게 발송되는 것이며,

이는**4684 HOLYCON CIRCLE, SAN JOSE, CA 95136** 에 관한것입니다.

이 부동산은 귀하의 채무 및 신탁 증서나 저당권에 의해 보증된 기타 채무를 이행하기

위해 매각될 수 있습니다.채무 불이행 통지서에서 설명된 바와 같이, **TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY** 는(은)상기 설명된 부동산의 저당권 또는 신탁 증서를 위반했습니다.

중요 통보: 귀하의 부동산이 체납으로 인해 차압이 진행 중인 경우, 그 부동산은 법원의 판결 없이 매각될 수 있으며, 귀하에게는 모든 미불금과 허용 가능 원가 및 법이 허용하는 시간 내에 계정 복구를 위한 비용을 지불함으로써 귀하의 계정을 완불 상태로 만들 수 있는 법적 권리가 있으며, 이 허용 시간은 보통 영업일로 부동산의 매각 예정일로부터 5일 전입니다. 부동산 매각 날짜는 채무 불이행 통지가 기록되는 날짜(통지서에 기재되어 있음)로부터 약 90일 이내로 정해질 수 없습니다.

이 금액은**$26,462.73** 현재**8/11/2015** 이며, 귀하의 계정이 기한 내

지불 상태가 될 때까지 증가할 것입니다.

귀하의 부동산 차압이 진행되는 동안에도 귀하는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무(보험, 세금 등)를 지불해야 합니다. 장래 대부금 지불, 부동산에 대한 세금 납부, 부동산에 대한 보험 유지, 또는 신탁 어음 및 증서 또는 저당권에 의해 요구되는 기타 채무에 대한 지불을 불이행하는 경우, 신탁수익자나 저당권자는 상기 사항이 이행되지 않으면 귀하의 계정이 완불 상태로 복구될 수 없다고 주장할 수 있습니다. 또한 신탁수익자나 저당권자는 복구의 조건으로 귀하에게 모든 선순위 담보권, 재산세 및 재해 보험료을 지불했다는 확실한 서면 증거를 제공할 것을 요구할 수 있습니다.

서면 요청시, 신탁수익자나 저당권자는 지불되어야 할 전체 금액에 대한 조목별 기재 문서를 제공할 것입니다. 완불을 요구한다 하더라도 귀하는 귀하 계정의 전체 미납 부분을 모두 지불할 필요는 없지만, 지불하는 당시 모든 채무 불이행 금액이 지불되어야 합니다. 그러나, 귀하와 귀하의 신탁수익자 또는 저당권자는 매각 통보의 게시 시점 이전에(이 채무 불이행 통지서가 기록된 후 3개월이 지나기 이전에는 가능하지 않음), (1) 부동산의 양도 또는 다른 방법으로 채무 불이행을 해결할 수 있는 추가적인 시간 제공, 또는 (2) 채무 불이행을 해결하기 위한 지급 일정의 확립, 또는 (1)과 (2)를 함께 수행하는 서면 사전 합의와 같은 해결 방법들이 있습니다.

본 통지서의 첫번째 단락에 나타난 만기일 이후, 차압이 진행되는 채무 또는 귀하와 귀하의 채권자에 의해 별도의 서면 합의에 의해 추가적인 시간이 허용되지 않는 한, 채권자가 요구하는 전체 금액을 지불하는 것이 귀하의 부동산 매각을 저지할 수 있는 유일한 법적 권리입니다.

귀하가 지불해야 할 금액을 알아보시려면, 차압을 중단하기 위한 지불 방법에 대해 합의하시려면 또는 다른 어떤 이유로 인해 귀하의 부동산에 대한 차압이 진행되는 경우, 다음으로 연락하십시오:

<div align="center">

**Bosco Credit LLC**

</div>

C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

질문이 있으신 경우, 변호사 또는 귀하의 대부금을 보증한 정부 기관에 연락하십시오.

귀하의 부동산에 대한 차압이 진행됨에도 불구하고 귀하는 부동산을 매각 처분할 수 있으며, 이때 부동산의 매각은 차압이 완료되기 전에 완료되어야 합니다.

신속히 행동하지 않으시는 경우, 법적 권리를 잃을 수 있는 사실을 명심하시기 바랍니다.

본 요약서의 추가적인 사본을 원하시는 경우, (949) 720-9200 (으)로
전화하시면 보내드립니다.

## AVISO DE INCUMPLIMIENTO
## RESUMEN DE LA INFORMACIÓN CLAVE

El aviso de incumplimiento adjunto se envió a TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, en relación con 4684 HOLYCON CIRCLE, SAN JOSE, CA 95136.

Es posible que esta propiedad sea subastada para cancelar su deuda y cualquier otra obligación garantizada por la escritura de fideicomiso o hipoteca en mora. Tal como se

describe en el aviso de incumplimiento, TINA PEREZ A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY ha incumplido los términos
de la hipoteca o escritura de fideicomiso relacionadas con la propiedad antes mencionado.

ADVERTENCIA DE IMPORTANCIA: SI LA PROPIEDAD VA A SER EJECUTADO POR UN ATRASO EN LOS PAGOS, PUEDE VENDERSE SIN NECESIDAD DE ENTABLAR NINGUNA ACCIÓN ANTE LA CORTE, pero usted tiene el derecho jurídico de regularizar su cuenta mediante el pago de todos los importes atrasados, más los costos y gastos permitidos, dentro del plazo permitido por ley para la regularización de la deuda, que es, por lo general, de cinco días hábiles antes de la fecha fijada para la subasta la propiedad. No se puede fijar una fecha para la subasta hasta aproximadamente 90 días después de la fecha en que se registre el aviso de incumplimiento adjunto (fecha que figura en el aviso).

El importe adeudado es de \$26,462.73 al día 8/11/2015 y aumentará hasta que se ponga al corriente en los pagos.

Mientras se mantenga vigente el procedimiento de ejecución de su propiedad, usted debe pagar otras obligaciones (tales como seguro e impuestos) exigidas en su vale y escritura de fideicomiso o hipoteca. Si no realiza los próximos pagos del préstamo, los impuestos de la propiedad, el seguro de la propiedad u otras obligaciones requeridas por el vale y la escritura de fideicomiso o hipoteca, el beneficiario o acreedor hipotecario pueden insistir en que los pague como condición para regularizar su cuenta. Asimismo, el beneficiario o acreedor hipotecario pueden exigirle, como condición para la regularización, que presente un comprobante confiable por escrito de que ha pagado todos los gravámenes principales, impuestos inmobiliarios y primas del seguro contra riesgos.

Si usted lo solicita por escrito, el beneficiario o acreedor hipotecario le entregarán un resumen por escrito del importe total que debe pagar. Es posible que usted no tenga que pagar la totalidad del monto adeudado de su cuenta, aunque la intimación haya incluido la totalidad de dicho monto, pero sí deberá pagar todos los importes vencidos a la fecha de la realización del pago. Sin embargo, antes de la fecha de publicación del aviso de venta (que no podrá ser menos de tres meses antes de la fecha de registro de este aviso de incumplimiento), usted y su beneficiario o acreedor hipotecario podrán acordar mutuamente por escrito, entre otras cosas: (1) un plazo adicional para subsanar el incumplimiento mediante una transferencia del bien o de otro modo; (2) un programa de pagos para subsanar el incumplimiento; o ambos.

Una vez vencido el plazo mencionado en el primer párrafo del presente aviso, salvo que la obligación que se ejecuta o un acuerdo por escrito separado entre usted y su acreedor permitan un plazo mayor, usted solo tendrá el derecho jurídico de detener la subasta de la propiedad mediante el pago de todo el importe adeudado cuyo pago haya exigido el acreedor.

Para averiguar el importe que debe pagar o coordinar un programa de pagos para suspender la ejecución, o si su propiedad va a ser ejecutada por cualquier otro motivo, comuníquese con:
Bosco Credit LLC
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

Si tiene alguna duda, debe consultar a un abogado o a la agencia de gobierno que asegura su préstamo.

Aun cuando ya se haya iniciado el procedimiento de ejecución, usted puede vender su propiedad, siempre que la venta se realice antes de la finalización del procedimiento de ejecución.

Recuerde que SI NO TOMA MEDIDAS DE INMEDIATO, ES POSIBLE QUE PIERDA SUS DERECHOS JURÍDICOS.

Si desea recibir copias adicionales de este resumen, puede llamar al teléfono (949) 720-9200.

## PABATID NG HINDI PAGKAKABAYAD
## BUOD NG PANGUNAHING IMPORMASYON

Ang nakakalip na notice of default (pabatid ng hindi pagkakabayad) ay ipinadala kay TINA PEREZ  A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, sa may kaugnayan sa 4684 HOLYCON CIRCLE, SAN JOSE, CA 95136.

Ang ari-arian na ito ay maaaring ibenta para masiyahan ang inyong obligasyon at alinmang iba pang obligasyong natibay ng deed of trust (papeles ng panagot sa utang) o isinangla na hindi nabayaran.  TINA PEREZ  A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY ay, tulad nang inilarawan

sa notice of default (pabatid ng hindi pagkakabayad), hindi natupad na isinangla o deed of trust (papeles ng panagot sa utang) sa ari-arian na inilarawan sa itaas.

MAHALAGANG PAUNAWA:  KUNG  ANG INYONG ARI-ARIAN AY MAREREMATA SANHI NG INYONG PAGKUKULANG SA MGA KABAYARAN, MAAARI ITONG IBENTA NANG WALANG ANUMANG PAGKILOS MULA KORTE, at maaaring kayo ay may legal na karapatan na muling maisaayos para maturing na mainam na katayuan ang inyong account sa pamamagitan ng pagbabayad sa lahat ng inyong nakalipas na bayarin at ang mga pinahihntulutan na gastusin at singil sa loob ng panahon na pinahihintulutan ng batas para sa muling pagtatalaga ng inyong account, na karaniwang limang araw ng trabaho bago ang petsang itinakda para sa pagbebenta ng inyong ari-arian. Ang petsa ng pagbebenta ay hindi maaaring itakda hanggang makalipas ang 90 na araw mula sa petsa na ang pabatid ng hindi pagkakabayad ay maaaring maitala (aling petsa ng muling pagtatala na ipinapakita sa pabatid).

Ang halagang ito ay $26,462.73 base sa petsang 8/11/2015 at tataas hanggang ang inyong account ay masapanahon.

Habang ang inyong ari-arian ay inireremata, maaari ninyo pa rin bayaran ang iba pang mga obligasyon (tulad ng insurance at mga buwis) na hinihiling ang inyong tala at deed of trust (papeles ng panagot sa utang) o isinangla.  Kung kayo ay hindi makapagbayad sa utang, magbayad sa mga buwis sa ari-arian, kumuha ng insurance sa ari-arian, o bayaran ang iba pang mga obligasyon tulad nang hinihiling sa tala o deed of trust (papeles ng panagot sa utang) o isinangla, maaaring pilitin ng benepisyaryo o nag-sangla (nagkaloob ng isinangla) na gawin ninyo ito upang muling maitalaga ang inyong account patungo sa mainam na katayuan. Bilang karagdagan dito,  maaaring hilingin bilang kondisyon ng benepisyaryo o nag-sangla para sa muling pagtatalaga, na kayo ay magbigay ng mapagkakatiwalaang nakasulat na katibayan na inyong nabayaran ang mga lumang garantiya, buwis sa ari-arian, at mga hulog sa seguro para sa pinsala.

Sa inyong naibigay na nakasulat na kahilingan, ang benepisyaryo o nag-sangla ay magbibigay sa inyo ng nakasulat na detalyadong listahan ng kabuuang halaga na dapat ninyong bayaran.  Maaaring hindi ninyo kailangang bayaran ang kabuuan ng inyong hindi pa bayad na bahagi ng inyong account, kahit na hinihiling ang buong kabayaran, pero kailangan muna ninyong bayaran ang lahat ng mga halaga na nagkukulang ayon sa kasunduan sa panahon na naisagawa ang pagbabayad.  Gayunman, kayo at ang inyong benepisyaryo o nag-sangla ay maaaring magkasundo sa pamamagitan ng kasulatan bago ilagay ang abiso ng pagbebenta (na hindi maaaring mas maaga sa tatlong buwan makalipas na matala itong notice of default o abiso ng hindi pagkakabayad) sa, bukod sa iba pang mga bagay, (1) magbigay ng dagdag na panahon kung saan ang kalutasan sa hindi pagtutupad sa napagkasunduan sa pamamagitan ng paglilipat ng ari-arian o sa iba pang paraan; o (2) magtatag ng tipanan ng mga pagbabayad upang malutas ang inyong pagkukulang; o parehong (1) at (2).

Kasunod ng paglipas ng itinakdang panahon na tinutukoy sa unang talaga ng pabatid na ito, maliban kung ang obligasyon sa pagkakaremata o sa hiwalay na nakasulat na kasunduan sa pagitan ninyo at ng inyong creditor ay nagpapapahintulot sa isang mas pinatagal na panahon, mayroon lamang kayong legal na karapatan na ihinto ang pagbebenta ng inyong legal na ari-arian sa pamamagitan ng pagbabayad ng buong halagang hinihingi ng inyong creditor.

Upang malaman ang halagang kailangan ninyong bayaran, o para isaayos ang mga pagbabayad para maihinto ang pagkakaremata, o kung ang inyong ari-arian ay maremata sa iba pang kadahilanan, makipag-ugnayan sa:

Bosco Credit LLC
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn: Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

Kung kayo ay mayroong kahit na anong katanungan, kailangan ninyong makipag-ugnayan sa isang abogado o ahensya ng pamahalaan na maaaring nagkaloob ng insurance sa inyong utang.

Sa kabila ng katotohanan na ang inyong ari-arian ay nireremata, maaari ninyong ihandog na ipagbenta ang inyong ari-arian, sa kundisyon na ang pagbebenta ay natapos bago ang pagtatapos ng pagkakaremata.

Tandaan, MAAARING MAWALA SA INYO ANG MGA LEGAL NA KARAPATAN KUNG HINDI KAYO KUMILOS KAAGAD.

Kung nais ninyo ng karagdagang mga kopya ng buod na ito, maaari ninyong makuha ang mga ito sa pamamagitan ng pagtawag sa (949) 720-9200.

## THÔNG BÁO VỀ VIỆC QUÁ HẠN TRẢ NỢ
## BẢN TÓM LƯỢC CÁC THÔNG TIN CHÍNH

Thông báo quá hạn trả nợ kèm theo đây được gửi cho TINA PEREZ  A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY, liên quan đến 4684 HOLYCON CIRCLE, SAN JOSE, CA 95136.  Căn nhà này có thể được bán để hoàn trả số tiền nợ của quý vị và bất kỳ khoản nợ nào khác theo khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà đã quá hạn trả. Như trình bày

trong thông báo quá hạn trả nợ, TINA PEREZ  A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY đã vi phạm hợp đồng vay thế chấp mua nhà hoặc khế ước ủy thác đối với căn nhà mô tả ở  trên.

THÔNG BÁO QUAN TRỌNG: NẾU CĂN NHÀ CỦA QUÝ VỊ BỊ TỊCH THU THẾ NỢ VÌ QUÝ VỊ KHÔNG TRẢ TIỀN ĐÚNG HẠN, CĂN NHÀ ĐÓ CÓ THỂ ĐƯỢC BÁN MÀ KHÔNG CẦN KIỆN RA TÒA, và theo luật quý vị có quyền trả nợ đầy đủ cho trương mục của mình bằng cách trả toàn bộ số tiền đã quá hạn trả cộng với các khoản chi phí và phí tổn được phép trong thời gian luật pháp cho phép để khôi phục lại tài khoản của quý vị, thường là năm ngày làm việc trước ngày dự định bán căn nhà của quý vị. Không được thu xếp ngày bán nhà cho tới khoảng 90 ngày kể từ ngày thông báo quá hạn trả nợ kèm theo có thể được lưu hồ sơ (ngày lưu hồ sơ như ghi trên thông báo).

Số tiền này là \$26,462.73 tính tới ngày 8/11/2015 và sẽ tăng cho tới khi tài khoản của quý vị được thanh toán đầy đủ.

Trong thời gian căn nhà của quý vị bị tịch thu thế nợ, quý vị vẫn phải trả các khoản tiền khác (ví dụ như bảo hiểm và thuế) theo giấy vay nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà của quý vị. Nếu sau này quý vị không tiếp tục trả nợ khoản vay đó, trả thuế cho căn nhà đó, cung cấp bảo hiểm cho căn nhà, hoặc trả các khoản tiền khác theo qui định trong giấy cam kết trả nợ và khế ước ủy thác hoặc hợp đồng vay thế chấp mua nhà, người thụ hưởng hoặc người cho vay thế chấp mua nhà có thể yêu cầu quý vị làm như vậy để phục hồi tài khoản của quý vị. Ngoài ra, người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể đưa ra điều kiện tái phục hồi, đó là quý vị phải cung cấp chứng từ đáng tin cậy về việc đã trả tất cả các khoản tịch thu thế nợ trước đó, thuế bất động sản, và lệ phí bảo hiểm rủi ro nguy hiểm.

Sau khi nhận được yêu cầu bằng văn bản của quý vị, người thụ hưởng hoặc bên cho vay thế chấp mua nhà sẽ gửi cho quý vị một bản liệt kê chi tiết toàn bộ số tiền mà quý vị phải trả. Quý vị có thể không phải trả toàn bộ phần chưa trả trong trương mục của quý vị, mặc dù được yêu cầu trả toàn bộ, nhưng phải trả tất cả các khoản tiền đã quá hạn trả nợ vào thời điểm trả tiền. Tuy nhiên, quý vị và người thụ hưởng hoặc bên cho vay thế chấp mua nhà có thể thỏa thuận bằng văn bản trước thời điểm niêm yết thông báo bán (không được sớm hơn ba tháng sau khi thông báo vi phạm hợp đồng này được lưu hồ sơ) để, ngoài các việc khác, (1) gia hạn thêm thời gian khắc phục tình trạng quá hạn trả nợ bằng cách chuyển nhượng căn nhà hoặc theo cách khác; hoặc (2) sắp xếp kế hoạch trả góp để khắc phục tình trạng vi phạm hợp đồng của quý vị; hoặc cả (1) và (2).

Sau khi hết thời hạn được nhắc tới trong đoạn đầu tiên của thông báo này, trừ khi số tiền bị tịch thu thế nợ hoặc có thỏa thuận riêng bằng văn bản giữa quý vị và chủ nợ cho phép gia hạn thêm thời gian, theo luật quý vị chỉ có quyền ngừng việc bán căn nhà của quý vị bằng cách trả toàn bộ số tiền mà chủ nợ yêu cầu.

Để biết số tiền mà quý vị phải trả, hoặc để thu xếp việc trả tiền nhằm ngăn chặn tình trạng tịch thu nhà thế nợ, hoặc nếu căn nhà của quý vị đang bị tịch thu thế nợ vì bất kỳ lý do nào khác, liên lạc:

<div align="center">

Bosco Credit LLC
C/O The Wolf Firm, A Law Corporation
2955 Main Street, 2nd Floor
Irvine, California 92614
Attn:  Foreclosure Department Phone: (949) 720-9200 / Fax (949) 608-0130

</div>

Nếu có thắc mắc, quý vị nên liên lạc với một luật sư hoặc cơ quan chính phủ có thể đã bảo hiểm khoản vay của quý vị.

Cho dù căn nhà của quý vị hiện đang bị tịch thu thế nợ của quý vị, quý vị có thể chào bán căn nhà đó, với điều kiện việc bán nhà phải kết thúc trước khi kết thúc thủ tục tịch thu nhà thế nợ.

Xin nhớ, QUÝ VỊ CÓ THỂ MẤT CÁC QUYỀN HẠN PHÁP LÝ NẾU KHÔNG HÀNH ĐỘNG NGAY.

Nếu muốn có thêm bản sao của thông báo này, quý vị có thể gọi (949) 720-9200.

# EXHIBIT 7

REDACTED

## Total Due Summary

| Loan ID | **Name** |
|---|---|
| REDACTED | PEREZ, TINA J |

| Date | Description | Amount |
|---|---|---|
| 10/20/2010 | Borrower Payment | $410.47 |
| 11/20/2010 | Borrower Payment | $410.47 |
| 12/20/2010 | Borrower Payment | $410.47 |
| 01/20/2011 | Borrower Payment | $410.47 |
| 02/20/2011 | Borrower Payment | $410.47 |
| 03/20/2011 | Borrower Payment | $410.47 |
| 04/20/2011 | Borrower Payment | $410.47 |
| 05/20/2011 | Borrower Payment | $410.47 |
| 06/20/2011 | Borrower Payment | $410.47 |
| 07/20/2011 | Borrower Payment | $410.47 |
| 08/20/2011 | Borrower Payment | $410.47 |
| 09/20/2011 | Borrower Payment | $410.47 |
| 10/20/2011 | Borrower Payment | $410.47 |
| 11/20/2011 | Borrower Payment | $410.47 |
| 12/20/2011 | Borrower Payment | $410.47 |
| 01/20/2012 | Borrower Payment | $410.47 |
| 02/20/2012 | Borrower Payment | $410.47 |
| 03/20/2012 | Borrower Payment | $410.47 |
| 04/20/2012 | Borrower Payment | $410.47 |
| 05/20/2012 | Borrower Payment | $410.47 |
| 06/20/2012 | Borrower Payment | $410.47 |
| 07/20/2012 | Borrower Payment | $410.47 |
| 08/20/2012 | Borrower Payment | $410.47 |
| 09/20/2012 | Borrower Payment | $410.47 |
| 10/20/2012 | Borrower Payment | $410.47 |
| 11/20/2012 | Borrower Payment | $410.47 |
| 12/20/2012 | Borrower Payment | $410.47 |
| 01/20/2013 | Borrower Payment | $410.47 |
| 02/20/2013 | Borrower Payment | $410.47 |
| 03/20/2013 | Borrower Payment | $410.47 |
| 04/20/2013 | Borrower Payment | $410.47 |
| 05/20/2013 | Borrower Payment | $410.47 |
| 06/20/2013 | Borrower Payment | $410.47 |
| 07/20/2013 | Borrower Payment | $410.47 |
| 08/20/2013 | Borrower Payment | $410 47 |
| 09/20/2013 | Borrower Payment | $410.47 |
| 10/20/2013 | Borrower Payment | $410.47 |
| 11/20/2013 | Borrower Payment | $410.47 |
| 12/20/2013 | Borrower Payment | $410.47 |
| 01/20/2014 | Borrower Payment | $410.47 |
| 02/20/2014 | Borrower Payment | $410.47 |
| 03/20/2014 | Borrower Payment | $410.47 |
| 04/20/2014 | Borrower Payment | $410.47 |
| 05/20/2014 | Borrower Payment | $410.47 |
| 06/20/2014 | Borrower Payment | $410.47 |
| 07/20/2014 | Borrower Payment | $410.47 |
| 08/20/2014 | Borrower Payment | $410.47 |
| 09/20/2014 | Borrower Payment | $410.47 |
| 10/20/2014 | Borrower Payment | $410.47 |
| 11/20/2014 | Borrower Payment | $410.47 |
| 12/20/2014 | Borrower Payment | $410.47 |
| 01/20/2015 | Borrower Payment | $410.47 |

# Franklin Credit Management Corporation

REDACTED

## Total Due Summary

| Loan ID | Name | |
|---------|------|---|
| 02/20/2015 | Borrower Payment | $410.47 |
| 03/20/2015 | Borrower Payment | $410.47 |
| 04/20/2015 | Borrower Payment | $410.47 |
| 05/20/2015 | Borrower Payment | $410.47 |
| 06/20/2015 | Borrower Payment | $410.47 |
| 07/20/2015 | Borrower Payment | $410.47 |
| 08/20/2015 | Borrower Payment | $410.47 |
| 09/20/2015 | Borrower Payment | $410.47 |
| 10/20/2015 | Borrower Payment | $410.47 |
| 11/09/2015 | Late Charges | $2,790.47 |

**Grand Total**    $27,829.14

Username:   tcoleman